No. 7520.

W. G. WILMOT & Co. *vs.* STEAMER OUACHITA BELLE.

The retrocession of property does not obliterate the ownership of the purchaser, which existed during the interval between the sale and retrocession; nor affect privileges acquired on the property, under said ownership.
A commercial partner has the right to confess judgment in behalf of his firm.

APPEAL from the Fifth District Court, parish of Orleans. *Rogers,* J.

J. McConnell for Plaintiffs and Appellees :
First—The Plaintiffs rely upon the fact that their claim is for necessary

supplies purchased by the captain in command of the steamer, on the credit of the steamer, fully proven to be just and correct, and so admitted to be *judicially.*

Second—They rely upon the seizure by the sheriff under the *fi. fa.,* and the privilege given by that seizure (C. P. 722), as well as upon the advantage of the adverse *judicial possession* resulting from that seizure, which rendered it legally impossible for their judgment debtors, McElroy & Melançon, by a retrocession or otherwise, to disregard that seizure or in any way affect their rights as seizing creditors under it. The Court will bear in mind that under the terms of the release, Wilmot & Co. are to be accorded all the benefit resulting from the seizure, and the pretensions of Blanks, the opponent, are to be decided precisely as if the steamer still remained in the custody of the sheriff.

Third—They contend that the paper (Record, 139–139), relied on by Blanks as an act of sale from himself to McElroy & Melançon never conveyed title, because, (1) It was simply an agreement *to sell;* (2) It was *never recorded* in the office of the collector of the customs, as required by law.

See U. S. Revised Statutes, secs. 4192 to 4196, inclusive.

3 An. 88.   C. C. 2796.   8 N. S. 390 ; 17 La. 85; 4 La. 110 ; 2 Rob. 182, 229.

Fourth—The appellees next contended that, if there was a sale and transfer of title as claimed by the opponent, then the retrocession of that title could not be made by McElroy & Melançon to their prejudice,. or in disregard of the rights they had acquired as furnishers of supplies in good faith, even if there had been no seizure made under this judgment by the sheriff. The Code in positive terms prohibits individuals from renouncing what the law has established in their favor, when *the rights of others are affected thereby.*

C. C. art. 11.   6 An. 2.   C. C. 1989 (1984).   28 An. 739.   2 Rob. 180.   4 La. 198.   23 An. 355.   4 La. 198 ; 9 Rob. 306 ; 3 N. S. 466.

   Bentinck Egan and Singleton & Browne for Opponent and Appellant :

First—Plaintiffs had no privilege on the boat at the time the seizure was made.   Their claim was prescribed.   C. C. 3277—3237.

Second—Defendants were not commercial partners, and one of them had no right to confess judgment for the other.   C. C. 2997.   1 An. 147. C. P. 206.   3 An. 34.

Third—The nullity of a judgment may be alleged, even collaterally, in

any form of proceeding, by any one having the least interest to have the nullity pronounced. 30 An. 694 ; 1 N. S. 9 ; 21 An. 26 ; 11 An. 761 ; 24 An. 252 ; 8 N. S. 145.

Fourth—The retrocession, by virtue of the resolutory condition, put the parties back in the same position they occupied previous to the sale, and the opponent took his property back free from all charges created by the 'purchasers or resulting by the operation of the law from his possession as owner. C. C. 2046. 19 La. 28 ; 6 An. 2 ; 8 La. 83 ; 12 An. 699 ; 7 An. 135, and Stevenson vs. Brown, not yet reported.

The opinion of the Court was delivered by

FENNER, J.  On October 12th, 1876, F. A. Blanks, by private agreement, sold to McElroy & Melançon the steamboat " Ouachita Belle," for the agreed price of $34,000, of which $15,000 was paid in cash, and the balance was to be paid by stated installments.  The vendor subsequently received, on account of the price, $1750, making in all $16,750 paid by the vendees.  McElroy & Melançon received possession of the boat as owners and ran her as such, McElroy acting as captain and Melançon as agent and financial manager.  While so running her, they became indebted to plaintiffs in the sum of $5700 for supplies of coal furnished to, and actually used by, the boat.

In May, 1877, Wilmot & Co., plaintiffs, brought this suit, for above debts, against McElroy as captain, and McElroy & Melançon, as owners of the boat ; and McElroy acting for himself as captain and for both the owners, appeared and made a confession of judgment as prayed for, upon which judgment for the amount claimed, and with special privilege upon the boat, was rendered.

The testimony makes it clear that this action of McElroy was taken with the knowledge of Melançon, and was approved and ratified by him, and he urges nothing against it.  Subsequently, Plaintiffs issued execution on this judgment, and on the 24th of August, 1877, the boat was actually seized thereunder.

On the 25th of August the following act of retrocession was executed :

" We purchased from Captain F. A. Blanks the Steamer Ouachita Belle, on the 12th of October, 1876, for the price of $34,000, and we paid cash on account of the price about fifteen thousand dollars ($15,000), and have had possession of the said boat ever since the day we purchased. We are absolutely unable to pay the balance of the purchase-price, or any part thereof, and we hereby cancel and annul the sale, and return the boat to Captain F. A. Blanks.  We, the purchasers, make no claim

for the cash paid by us on account of the price, and Captain Blanks makes no claim for the use of the boat, one to offset the other.

"New Orleans, August 25, 1877.

"(Signed)                         "JAMES P. McELROY,.

"E. O. MELANÇON,.

"F. A. BLANKS."

Blanks thereafter filed his opposition claiming the dissolution of the seizure and that he be decreed the owner of the boat and that she is, in no manner, liable to be seized under plaintiffs' judgment.

He bases his demand upon the ground that the foregoing retrocession was simply a voluntary enforcement of the resolutory condition, the effect of which was to operate a complete revocation of the original sale and to cause the property to revert to him, free from any charge or encumbrance created by the purchaser.

The doctrine, that the rights of *bona fide* encumbrances upon the property in the hands of purchasers who have not paid the price can be cut off by any thing but a judicial rescission of the sale for non-compliance under the resolutory condition, was not adopted by this Court without grave consideration of the injustice likely to result therefrom in particular cases, and without a recognition of the nicely balanced conflict of authority which existed on the subject; and, at last, it received only the diffident assent of Judge Slidell and encountered the positive dissent of Chief Justice Eustis—all of which appears from the opinions in the case of Chrétien vs. Richardson, 6 An. 2, upon which authority alone the principle rests.

While recognizing the authority of this case, we are not disposed to extend its application one whit beyond the terms which it prescribes. Those terms are tersely expressed in the following extract, viz.: "Whenever a necessary cause of resolution exists, the purchaser may do voluntarily *what he can be compelled to do by suit.*"

It is perfectly clear that McElroy & Melançon could not have been compelled, by suit, to do that which they have done by this act of retrocession. Nothing is better settled than that the party who demands the rescission of his contract must restore his adversary to the situation in which he was before the contract, and, in cases of sale, must restore whatever portion of the price he may have received.

23 A. 355, 28 A. 739, 2 Rob. 166, etc.

It follows that Blanks could not have compelled McElroy & Melançon to rescind this sale without first returning to them the $16,750, which, as heretofore shown, had been paid by them on account of the price. If he had done this, it would have furnished them a fund out of which the debt of plaintiffs might have been, and should have been paid. If the parties desired to substitute the voluntary for the judi-

cial rescission, and to give to the former the extraordinary effect of revoking the contract *ab initio* and of obliterating all claims and privileges of third persons against the property which may have been acquired during the possession of the purchasers, we are satisfied they were bound to comply, in their voluntary act, with all the requirements which the law would have imposed in the judicial proceeding. The purchasers had no authority to abandon, or even to compromise, the rights secured to them by law, to the prejudice of a creditor who, by seizure or otherwise, had acquired a privilege on the property.

Civil Code arts. 11, 1989.

George vs. Knox, 23 A. 354.

For these reasons, we agree with the learned judge of the District Court that the retrocession did not have the effect sought to be attributed to it. It operated merely as a conventional reconveyance of the property, binding the parties thereto according to the terms of their stipulations, but not obliterating the antecedent ownership of the purchasers during the interval between the sale and retrocession, nor affecting privileges acquired under said ownership.

Taking this view, we consider it as disposing of the case. We cannot recognize the right of Blanks to dispute the validity of the judgment against McElroy & Melançon, in absence of any imputation of fraud or any question as to the reality and justice of the debt, upon grounds affecting merely the *modus procedendi* not raised or desired to be raised by defendants. Melançon does not dispute the authority of his partner to confess judgment for them both ; but, on the contrary, admits his authority and confirms and ratifies his act. But we think, at all events, the judgment was valid. It is not denied that, after the purchase of this vessel, McElroy & Melançon were associated together for the purpose of carrying personal property for hire, and were actually so engaged with this very vessel at the time when this debt was incurred. They were therefore commercial partners.

Kimball vs. Blanc, 8 N. S. 390.

Black vs. Savory, 17 La. 85.

David vs. Eloi, 4 La. 110.

2 Rob. 182, 129.

1st. A. 147.

There is no evidence of any express dissolution of this partnership, nor is such dissolution to be implied from the mere fact of a temporary laying up of their vessel.

The suit was brought against the " Commercial firm of McElroy & Melançon, composed of James P. McElroy & E. O. Melançon." The judgment is confessed by McElroy in behalf of said firm, and is ren-

dered against "McElroy & Melançon & E. O. Melançon & J. P. Mc-Elroy."

Unless it be shown that the partnership had been dissolved prior to the judgment, he had a right to confess judgment for the firm. It is not so shown. The case of Hefferman vs. Brenham, 1. A. 147, relied on by counsel for opponent, has no application. That case only holds that in suits against a partnership which has no social name or title a citat'on addressed to one partner will not bring the firm into Court, under Art. 198 of the Code of Practice. But here it appears the partnership had a firm name ; and, besides, it is not a question of citation. The power of a member of a commercial partnership to confess judgment against the partnership is not impaired by the want of a social name. The judgment was perfectly valid ; and the seizure thereunder conferred an unquestionable privilege antedating the retrocession to Blanks. Under the doctrine of Lalance vs. Wolff, 28th A. 942, even a judicial proceeding to enforce the resolutory condition could not be maintained to the prejudice of such a seizure of movable property, which is assimilated to a sale of movables ; and the Court there held that "the rights to and upon movable property are subject to rules different from those relating to immovables," and, substantially, that a vendor could not dissolve the sale of movables "found in the hands of a second and third vendee." We prefer, however, not to place this decision upon the doctrine of that case, because it is unsupported, and the questions involved are so important that we do not wish to follow it hastily, where it has not been discussed by counsel.

The rights of plaintiffs here are sufficiently supported by the position first taken.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed at appellant's costs.

Rehearing refused.