Cole vs. Thompson et als.

### No. 111.

#### R. T. COLE vs. WM. H. THOMPSON ET ALS.

The State of Louisiana, during the late war between the States, preserved her autonomy, and possessed a fully organized government.

She did not forfeit her title to the swamp lands previously acquired, by becoming a member of a Confederacy at war with the United States. During the pendency of the war she had the power to sell her lands, and her officers, charged with such duties, to make the sales, and the purchasers acquired valid titles, if the State laws relating to such sales were complied with.

There is a legal presumption, that all swamp lands were surveyed before their selection was approved by the general government. The law required them to be surveyed before presented for approval, and the officers charged with approving them are presumed to have done their duty.

The same presumption exists in case of entries, under the State preëmption laws, that the conditions have been complied with, and it is only the conclusive evidence that can overthrow such presumptions.

Where plaintiff and defendant both hold title from the State, the first purchase must prevail, if not successfully impeached.

APPEAL from the First District Court, Parish of Caddo. *Taylor, J.*

*Wise & Herndon* for Plaintiff and Appellee:

1. The Act of March 3d, 1857, confirmed to the several States their selections of swamp lands, which had then been reported to the commissioner of the general land office, so far as the lands were then "vacant and unappropriated, and not interfered with by an actual settlement" under existing laws. U. S. R. S. 2484.

2. The selections so confirmed could not be set aside, nor could titles to any of the land which they embraced, unless it came within the exceptions mentioned in that act, be thereafter conveyed by the United States to parties claiming adversely to the swamp land grant. 7 Otto, 97; U. S. R. S. 345.

3. By the confirmation by Congress, on the 3d of March, 1857, of the selection made by the State of Louisiana, granted to her by the Act of Congress, approved March 2d, 1849, and the Act approved September 28th, 1850, and by the Act of the State No. 104, on page

Cole vs. Thompson et als.

245 of the Acts of 1871, confirming all sales and collections of public lands made by the State, from the 1st of January, 1861, to the 14th day of October, 1864, the land in controversy, in this instance, was severed from the public domain, and the subsequent grant thereof by the United States in no manner impaired or defeated the title previously acquired by the State and transferred to Williams in due form of law, at that time in full force, and afterwards confirmed. See Acts of 1861, No. 267; 1871, Act No. 104, p. 243; Marks vs. Martin, 27 An. 527.

4. Both plaintiff and defendant claim title from a common author, the State of Louisiana. The plaintiff's title being the oldest and of equal dignity with defendant's must prevail. 3 Rob. 293; Scott vs. Prudenhomme et al., 10 An. 515; Bell vs. Hearne, 1 An. 249; 4 An. 267; 5 An. 677; 6 An. 773; 7 An. 445.

### *Land & Land* for Defendants and Appellants:

1. The patent from the State held by the defendant is the legal title and must prevail, unless plaintiff shows a prior equitable title, good in law and indefeasable by any action of the land department. 14 An. 772; 15 An. 237.

2. The Receiver's receipt, issued to plaintiff's author in March, 1862, by the alleged Confederate Register, at Natchitoches, under the State preëmption act of 1861, was null and void, because the land entered had not been surveyed into legal subdivisions, and was not so surveyed until 1871, nor had the land been offered for sale by the State Government, or by the United States, as expressly required by law, State and Federal.

There is no legal proof of the official capacity and authority of the alleged Confederate Register to sell the land; and the Court cannot notice the fact of his appointment and qualification without proof. Buford vs. Johnson, 10 R. 456; Succession of Grant, 14 An. 795.

Payment of the price did not vest any equitable title in the purchaser. 4 An. 458.

3. As a patent is superior in dignity to a Receiver's receipt, the maxim of *prior in tempore potior in jure* does not apply. H. D. 1271-2. Plaintiff, having failed to show any facts beyond the bare payment of the price to support his claim, the patent must prevail. 4 R. 79; 20 An. 439.

4. The pretended preëmptor was never in possession of the land in dispute, never resided thereon, and on the very day of entry sold to a third person at a profit of 250 per cent. The *onus probandi* was on plaintiff to show a legal entry, and title good against the world, or such a state of facts as would give him a good title in equity against the patent. The legal presumption is in favor of the patent.

5. Act 104, of 1871, did not confirm all sales and locations made during the late war—but only those of record in the State Land Office at New Orleans.

Plaintiff was bound to show such record affirmatively, to entitle him to the benefits of the act. See sec. 12, of Act 104 of 1871.

6. In Marks vs. Martin, 27 An. 527, there was no conflict of titles derived from the State of Louisiana, no question of surveys and offerings for sale by the government, no dispute as to the confirmation and registry of title under the Act of 1871, no contest, in fact, as to the derivation of the plaintiff's title from the State—but the ownership of the State under the Act of 1849, was the sole point at issue and only question decided. The land was in a different section, township and range.

---

The opinion of the Court was delivered by

TODD, J. This case presents a controversy between plaintiff and defendant respecting the land described in the petition as the N. E. ¼ Section 1, T. 20, R. 15, situated in the Parish of Caddo.

Both parties claim to have acquired it from the State, it being swamp

land and embraced in the donations of swamp lands made to the State by the United States under sundry Acts of Congress.

The plaintiff claims under an entry made on the 17th of March, 1862, by Chesley C. D. Williams, and several mesne conveyances from him.

The defendant claims under an entry made in 1878 and a patent issued the same year.

The plaintiff's title being the oldest, must prevail, unless successfully impeached. It is assailed on several grounds, which are thus stated in the brief of defendant's counsel:

1.   In 1861 the land in dispute was *unsurveyed*, and belonged to the public domain of the United States, and the State government, organized in Louisiana at that time, had no power or authority to sell said land.

2.   Because the pretended Receiver, who issued the receipt sued on, had no authority or power to sell said land, either as the property of the United States or of the State of Louisiana.

3.   Because said pretended sale was never recorded on the maps of the State Land Office, as expressly required by law.

4.   Because, in 1861, the said land was not subject to sale or entry, and the said Williams entered said land not for himself, but for R. T. Noel, in fraud of the laws of the United States and of the State.

These several grounds we will proceed to consider:

*First.*   If the land in 1861 belonged to the United States, then neither party has a title to it, as both claim from the State, and the only title ever acquired by the State was under the swamp land acts of 1849 and 1850, and approvals of the selections made thereunder, either by the Secretary of the Treasury or other proper officer, or by Act of Congress.

Approvals of the selections were made in 1852 by the Secretary of the Treasury, and subsequently, in 1857, by Act of Congress, and embraced the land now in dispute.   These approvals covered all lands donated to the State, selected up to those dates, whether surveyed or unsurveyed, although, as will hereafter appear, the Acts contemplated that the lands would be surveyed before selected, and the approvals created a presumption that they were so surveyed.

If the lands in question belonged to the State at that time, and there was no legal obstacle in the way of the sale, by reason of some provision of the State law, the State had the power to make the sale, under its government as then organized.   It is true that, at the time, the State was a member of a Confederacy then at war with the United States, but that fact worked no forfeiture of title to her lands or any other property within her limits.   The State had preserved her au-

tonomy complete, possessing a government fully organized, each department thereof in the full exercise of all its powers and functions, and whose existence was in no manner affected by the state of war then existing.

Therefore, the State had the power to sell its lands.

*Second.* As to the authority of the Receiver to allow the entry and issue the certificate, it depended upon the provisions of the State law regulating the sales of the public lands. His capacity was sufficient, as an officer of the State government in charge of the land department, and the only question is, whether, in thus disposing of it by entry, he violated any law of the State.

It is urged that this land was not subject to sale by private entry or under the right of preëmption at that time, because, as alleged, it was then unsurveyed. This seems to be the main point in the controversy.

The Act 267 of 1861 forbade the sale of any public land, unless it had been offered for sale at public auction, by legal subdivisions, by the State, or had been so offered by the U. S. Government, and by same Act entries by preëmption right could not be made before the lands were surveyed. This implied that no title could be acquired of the unsurveyed lands.

As stated before, the approval of these swamp lands to the State created the presumption that they had been surveyed.

The 2d section of the Act of 1849 authorized the Secretary of the Treasury to approve certified lists of swamp lands which had been surveyed by the State. The survey being a prerequisite to such approval, the legal presumption arises that it had been complied with, the approval having been made.

The counsel for the defendant, however, urges that this presumption is not conclusive, and that they have shown by proofs in the record, that the surveys were *not* then made. They point us to the survey made in 1872, called Parson's Survey, as establishing this fact. This only proves that a survey of the Township embracing this Section was then made, but that is not conclusive against a prior survey having been made. That a survey of the whole Township, or of part of it, must have previously been made in 1840, appears from an abstract of the records of the U. S. Land Office, which shows that, on the 27th of January of that year, the whole Township purports to have been offered at public sale, which, of course, pre-supposes that the whole of it had, even at that time, been surveyed. We refer to this in this connection, as establishing that more than one survey of the same lands may have

Cole vs. Thompson et als.

been made, but not as conclusive evidence that the land in dispute was at that time surveyed.

The counsel of the defendant contend that the whole Township could not then have been offered, for a map or plat of the lands accompanying the abstract referred to shows that the Section embracing this land could not have been offered and had not then been surveyed, because the area or number of acres of the Section is left blank. On the other hand, we are pointed to another abstract in the transcript, showing that partial surveys of this Section were made as far back as 1837 and 1839.

Under this state of facts, we are not satisfied that the evidence submitted conclusively establishes that no survey of the lands had been made at the date of the plaintiff's entry, or, in other words, that the legal presumption, arising from the approval of the lands on the part of the general government, has been rebutted. Giving full effect to the apposing proof, the several abstracts offered, *non constat* that there might not have been a survey of the land between 1849 and 1871, admitting that none was made previous to the year first mentioned, though no evidence of the same may appear in the record, the abstracts from the land office records, found in the transcript, do not purport to comprise all the entries relating to the land in controversy.

*Third.* It appears that the entry of Williams, under which the plaintiff claims, was recorded in the office where it was made. If it was a valid entry, and the title to the land passed thereby, this title could not be divested by a failure to record in the office subsequently established; such failure could only raise the question whether the entry was ratified by the effect of Act 104, Sec. 12, confirming sales of land made by the State from the 1st January, 1861 to the 14th October, 1864.

*Fourth.* As to the land being entered by Williams for the benefit of another person, and in fraud of the laws of the State, it is sufficient to say that the evidence does not establish this. In the absence of such proof, the presumption must prevail that the officer did his duty, and issued the certificate, upon being satisfied that all the conditions for the entry had been complied with by the party in whose favor it was issued.

In addition to the above, we would state that, although the plaintiff claims title from the State upon the certificate of entry, an extract from the records of the land office where the entry was made, found in the transcript, shows that a patent for the land was subsequently received at that office. We think it was competent to establish this

fact by the extract referred to, and without the production of the patent itself.

In regard to the matter of improvements, we have carefully examined the evidence relating thereto, and think the Judge below did substantial justice between the parties.

Judgment affirmed.