(45 South. 606.)

FREDERICK et al. v. GOODBEE et al.

(Feb. 3, 1908.)

1. TRESPASS—ISSUES—TITLE TO LAND.

Where the defendants, in an action for damages for trespass by cutting trees on a tract of swamp land, reconvened, asking to be recognized as owners of the land and of the trees taken therefrom, they thereby opened the door to plaintiffs to prove up their title. St. Paul v. Louisiana Cypress Lumber Co., 116 La. 590, 40 South. 906.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trespass, § 105.]

2. EVIDENCE—JUDICIAL NOTICE.

Courts will take judicial notice of the appointment and tenure of office of a member of the President's cabinet.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 66, 67.]

3. PUBLIC LANDS — SWAMP LANDS — SELECTIONS BY STATES.

Act Cong. March 3, 1857, c. 117, 11 Stat. 251, confirmed to the several states their selections of swamp lands which had previously been reported to the Commissioner of the General Land Office. The subsequent sale by the United States of a tract of land thus confirmed to the state of Louisiana was null and void.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, § 180.]

4. ADVERSE POSSESSION—WHAT CONSTITUTES.

The cutting of trees in small quantities and at long intervals on an isolated tract of swamp land, unaccompanied by external and public signs indicating intention to hold and preserve possession as owners, does not constitute that actual corporal possession required as the basis of the prescription of 10 and 30 years acquirendi causa.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Adverse Possession, §§ 112, 113.]

5. TAXATION—TAX SALE—TITLE ACQUIRED.

A valid tax sale of the property itself, without reservation, is a sale of the whole title, and cuts off all prior claims and incumbrances not specially excepted by statute. Such a tax sale is a new and complete title emanating from the sovereign.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 1463.]

6. ESTOPPEL—BY DEED.

The transferees of a tax title are not estopped by the execution or recitals of a collateral deed antedating the tax sale, although their immediate vendor was a privy to such instrument.

(Syllabus by the Court.)

Appeal from Twenty-Sixth Judicial District Court, Parish of St. Tammany; Thomas Moore Burns, Judge.

Action by Edward J. Frederick and Chauncey Z. Williams against Ernest Goodbee and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Ellis & White, for appellants. Miller & Morgan, for appellees.

LAND, J. Plaintiffs, alleging that they were the true and lawful owners and in possession of the N. ½ of the S. ½ of section 19, township 7 S., range 10 E., containing 162.98 acres, sued the defendants for damages for trespass thereon by cutting and removing timber, and enjoining them from committing further acts of trespass. Plaintiffs alleged title derived from George Koepp, Jr., as per recorded deed of date September 25, 1905.

Defendants, after pleading the general issue, alleged that they were the lawful owners and actual possessors of the said tract of land under a regular chain of title derived from the United States by patent of date June 1, 1860. Defendants pleaded the prescription of 10 and 30 years, and also estoppel by deed against George Koepp, Jr., and his assigns. Defendants prayed for judgment

recognizing them as the true and lawful owners and possessors of said tract of land, and rejecting plaintiffs' demand, with costs.

On the first trial there was judgment in favor of the defendants. On the second trial there was judgment in favor of the plaintiffs, recognizing them as the true and lawful owners of the land in controversy, and awarding them $20 damages and costs. Defendants have appealed.

The cause was decided in the court below on the question of title; the judge holding that neither side had proved actual possession.

Plaintiff's action is for damages for trespass, founded on alleged possession as owners. The only title set forth in the petition is the one from George Koepp, Jr., of date September 25, 1905. Plaintiffs do not pray to be decreed owners of the land. On the other hand, the defendants set up their alleged chain of title, and further title acquired by prescription. Defendants prayed for judgment recognizing them as owners of the tract of land in controversy.

While the action was not petitory, the question of legal title was raised by the reconventional demand of the defendants, and evidence of legal title in the plaintiffs was admissible in rebuttal. St. Paul v. Louisiana Cypress Lumber Co., 116 La. 590, 40 South. 906. Both parties traced their title to the United States. Plaintiffs claim through the state of Louisiana, and the defendants directly from the general government.

The whole of section 19 appears on list No. 1, approved May 5, 1852, of swamp and overflowed lands selected as inuring to the state of Louisiana under the act of Congress approved March 2, 1849, and on file in the General Land Office at Washington. This list was submitted for approval on May 4, 1852, by the Commissioner, and was approved by "Alexr. H. H. Stuart" May 5, 1852. Objection was made that there was no proof that Mr. Stuart was Secretary of the Interior in 1852, and that the certificates of the present Secretary of State and of the present Secretary of the Interior to the fact are not the best evidence, but that a duly certified copy of Mr. Suart's commission and oath of office should have been produced. We do not think that any evidence was required to prove that Mr. Stuart was Secretary of the Interior in 1852. Courts are bound to notice matters of historical notoriety, such as the appointment of a member of the President's cabinet. Walden v. Canfield, 2 Rob. (La.) 466. Moreover, the approval of the list of 1852 is unimportant, because Act Cong. March 3, 1857, c. 117, 11 Stat. 251, confirmed to the several states their selections of swamp lands, which had previously been reported to the Commissioner of the General Land Office. Cole v. Thompson, 35 La. Ann. 1026.

In 1866 the state sold the land in dispute to Henry McGuinn. In 1897 the title of McGuinn was divested by a tax sale at which R. J. Stroble became the purchaser. In 1902 Stroble sold to George Koepp, Jr., and in 1906 the latter conveyed the property to the plaintiffs.

In 1860 the land in dispute was patented by the United States to one John Perilloux. In 1888 the heirs of John Perilloux sold the same to Adam Perilloux, and in 1899 Adam Perilloux sold to the defendants herein.

As the land in controversy was confirmed to the state of Louisiana in 1857, the United States in 1860 had no title whatever to convey to John Perilloux. Hence the legal title was in Henry McGuinn.

In 1897 the land in dispute was sold at tax sale for the delinquent taxes of 1893, 1894, 1895, and 1896 due by the estate of Henry McGuinn. In 1898 the court ordered a writ of possession to issue in favor of the purchaser. There is no return on the writ, but the purchaser testified that he went on the land and had it surveyed. We under-

stand from his testimony that the writ was served by posting notice on the premises.

In 1898 no one was in actual possession of the tract of land in dispute. The defendants and their authors had never paid taxes on the property, and their titles were not recorded in the parish until the year 1899. We gather from the evidence that John Perilloux, in 1861 or 1862, entered the Confederate service and died during the Civil War, leaving as his heirs a father and mother and a number of brothers and sisters. The first appearance of these heirs as owners was in 1888, when they sold the property to Adam Perilloux. This title was not recorded until the year 1899, after the purchaser sold the land to the Goodbees. The heirs of John Perilloux had the land surveyed soon after the close of the Civil War. According to the testimony of a number of witnesses, from 1862 to 1892, at different times, wood and timber were cut on the land by or at the instance of some of the heirs of John Perilloux, and also by their vendee, Adam Perilloux. This removal of wood and timber seems to have been at long intervals and in comparatively small quantities. The tract was swamp land, densely wooded, and subject to overflow. The district judge says:

"Defendants' testimony shows that the property was surveyed shortly after the war; that tan bark was cut on the same; that wood was cut, all prior to 1875, with the exception of 25 or 30 logs cut on the land in 1892 by William Ross."

The district judge did not consider such evidence sufficient to prove actual corporeal possession as owners by the numerous heirs of John Perilloux and by their vendee, Adam Perilloux. We agree with our learned Brother in this conclusion. The occasional cutting and removal of timber from an isolated tract of forest land is no proof of actual possession as owners. MacCarty v. Foucher, 12 Mart. (O. S.) 17; Gardner v. Leger, 5 La. Ann. 594.

To maintain the plea of prescription acquir-endi causa there must be actual corporeal possession in the beginning, which must be continued, or else the possession must be preserved during the entire period of external and public signs announcing such possession and the intention to possess; and this rule applies with equal force to swamp as to other lands. Ramos Lumber & Mfg. Co. v. Sanders, 117 La. 615, 42 South. 158.

In South Louisiana Land Co. v. Riggs Cypress Co., 119 La. 193, 43 South. 1003, the defendant from season to season carried on regular operations with a pull boat for the removal of timber from a tract of swamp land. In the case at bar an analysis of the testimony of the witnesses for the defendant shows the cutting of timber in small quantities and at long intervals between 1861 and 1892 at the instance of a few of the many heirs of John Perilloux. Isolated acts of this kind, leaving hardly a trace in a virgin forest, do not constitute the "corporeal detention" of the thing which is required to initiate the current of prescription.

Prescription is based on actual possession as owners, "continuous and uninterrupted, peaceable, public, and unequivocal." A clandestine possession gives no right to prescribe. Civ. Code, art. 3487. The law contemplates that the corporeal possession of the thing should be accompanied by external and public signs, announcing the possessor's intention to preserve the possession of the thing, as the keeping up of roads and levees, the payment of taxes, the erection of works, and other similar acts. Civ. Code, arts. 3501, 3502. If the legal owner of the tract of land in controversy had visited the premises at any time between 1866 and 1897, he would possibly have discovered that some person or persons unknown had cut and removed an insignificant number of trees. If he had consulted the records of the parish, he would have found nothing to indicate an adverse claim to the land in question. The purchaser at the

tax sale of 1897 went on the premises, had the lines surveyed, and found no signs of adverse possession. The purchaser paid taxes on the land for several years, and then sold it to the vendor of the plaintiffs. It was not until 1899 that defendants recorded their title and commenced paying taxes.

We are clear in our opinion that there is no basis in the facts of this case for the prescription of 10 or 30 years.

In 1897 the property was sold at tax sale for taxes assessed against the estate of Henry McGuinn. In 1898 the purchaser sued out a writ of possession under the statute, went upon the land, and had the same surveyed.

The tax deed, now more than 10 years old, has never been judicially assailed by the defendants. The deed itself is prima facie evidence of a compliance with all the requirements of the law. As authorized by section 63, Act No. 85, p. 133, of 1888, the tax collector sold and conveyed the property, with the right to be placed in actual possession thereof. Such a tax sale under the very terms of the act operates as a cancellation of all conventional and judicial mortgages on the property. The sale of the property itself is a sale of the whole title, and in such case all prior claims in, to, or against the property are cut off and divested, and the purchaser acquires a new and complete title in the land under an independent grant from the sovereign authority. 2 Cooley on Taxation (3d Ed.) pp. 960, 961. Hence the tax sale of 1897 divested whatever title or civil possession that the heirs of John Perilloux or Adam Perilloux may have had in and to the land at the time.

The plea of estoppel rests on the following facts: In 1888 the 21 heirs of John Perilloux sold the land in dispute to Adam Perilloux by private act. Geo. Koepp, Jr., authorized his wife, Odelia, to sign the instrument. The tract was sold for $100, and what the interest of the wife was in the land or price does not appear on the face of the instrument or from the evidence. Conceding that all the signers shared equally, the wife received less than $5. The cases cited by defendant's counsel are where property was purchased or acquired in the name of the wife with the authorization of the husband. Under such circumstances this court has held that the husband was estopped to deny the recitals of the act that the purchase was made with the paraphernal funds of the wife. In the case at bar the husband simply authorized the wife to sign a deed of sale of her interest, whatever it might be, in a certain tract of land. The husband, at most, was estopped to deny the separate interest of the wife. But he did not warrant the title thus conveyed. The purchaser lost whatever title he had acquired from the wife by his failure to pay the taxes on the land for a period of nine years. The tax sale of 1897 vested a new title in a third person, who in 1902 sold the land to the husband, George Koepp, Jr. In 1906 Koepp, Jr., sold the property to the plaintiffs in this suit. Plaintiffs claim under the tax title of 1897, and there is nothing in the deeds constituting their chain of title to estop them from denying the title of the heirs of John Perilloux.

The deed of 1888 has no connection with plaintiffs' chain of title, and the estoppel, if any, arising therefrom, was personal to their vendor, George Koepp.

Judgment affirmed.

BREAUX, C. J., concurs in the decree.