No. ——

First Circuit

WILLIAMS CYPRESS CO., LTD. v. DUGAS ET AL.

(June 28, 1927. Opinion and Decree.)
(December 6, 1927. Rehearing Refused.)
(January 18, 1928. Writ of Certiorari and Review Denied by Supreme Court.)

(*Syllabus by the Editor*)

1. Louisiana Digest—Appeal—Par. 320, 326; Pleading—Par. 6, 39.

The general allegation that plaintiff had failed to comply with Article 276 of the Code of Practice is not equivalent to the notice required by Section 3 of Act No. 112 of 1916 on motion to dismiss that plaintiff had failed to furnish sufficient or proper bond.

2. Louisiana Digest—Prescription—Par. 18, 20.

Possession as lawful owner of land under title which did not except the trees thereon, although the trees had been previously decreed to another as movables before the passing of Act No. 188 of 1904, gives the owner of the land title to the trees under both Civil Code Articles 3506 and 3509, providing three and ten years prescription governing movables, after ten years undisputed possesion thereof.

ON REHEARING

3. Louisiana Digest—Prescription—Par. 18, 20; Things—Par. 5.

Standing trees sold separately became mobilized under the law in effect before the passage of Act No. 188 of 1904, which act made them immovable re-gardless of separate ownership. The trees sold before 1904 to separate owner remain movable after 1904 subject to the prescription applicable to movable property.

Appeal from the Parish of Assumption. Hon. Samuel A. LeBlanc, Judge.

Action by F. B. Williams Cypress Co., Ltd., against Henry Dugas et al.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Charles T. Wortham, of Donaldsonville, attorney for plaintiff, appellant.

Gilbert & Gianelloni, of Napoleonville, attorneys for defendant, appellee.

Elliot, J., dissents for written reasons.

LECHE, J. Plaintiff claims the ownership of certain timber and caused it to be sequestered. The timber is situated on lands belonging to the widow and heirs of Louis Gros, who, believing themselves to be owners thereof, sold it to the defendants on April 6, 1926. Defendants moved to dismiss the sequestration on the general ground that plaintiff had failed to comply with Article 276 of the Code of Practice. Plaintiff had furnished a bond to obtain the writ of sequestration, but failed to write in the body of the bond the amount thereof, viz: One thousand dollars, and the name of the surety, Emile Sundberry. The motion to dissolve is aimed at these omissions.

Under Act 112, p. 241, of 1916, bonds in judicial proceedings, including this class of bonds, provides the manner in which errors, inaccuracies and omissions may be corrected. According to the terms of the Act, it appears that plaintiff could have corrected the omission in the bond at any time before judgment, provided that if de-

fendants had, under Section 3 of the Act, caused a notice to be served upon plaintiff through the proper officer, claiming insufficiency of the bond in form of substance, the plaintiff would then only have had two legal days to make the correction or furnish a new bond.

More than two days elapsed before the correction was made in this case, and the question then arises whether the motion to dissolve, service of which was accepted September 2, 1926, is a sufficient compliance with the notice required by the Act of 1916.

The general allegation that plaintiff had failed to comply with Article 276, C. P., is not equivalent to a notice that plaintiff had failed to furnish a sufficient or proper bond. (Succession of Theriot, 114 La. 612; 38 South. 471.) Plaintiff did correct or furnish a new and proper bond before judgment. It was not, according to the terms of the statute, required to furnish such new bond within two days of the filing of the motion to dismiss, because that motion did not specifically advise it of the defect in the bond and thereby give it the opportunity to make the correction. The interlocutory judgment dissolving the sequestration upon that ground, is erroneous; the motion should have been overruled, and that judgment is therefore reversed.

On the merits of plaintiff's demand, it appears that plaintiff's author in title, and J. O. Delaune were, by a judgment of the District Court for the Parish of Assumption where the property is situated, recognized, the former as owner of all the trees, with the exception of ten standing cypress trees, situated on the W. half of lot 3, in Sec. 25, T. 14, S. R. 13 E., and the latter, J. O. Delaune, as owner of the land, together with all the buildings and improvements and ten standing cypress trees thereon. The

judgment was rendered December 10, 1900, or previous thereto.

On March 1, 1901, Delaune sold the land to Barilleaux and in that sale the trees are excepted. Barilleaux in two acts of sale, of date October 5, 1903, and January 13, 1906, sold the same land to Louis Gros. In neither of these sales was there any exception or reservation made of the trees. Louis Gros subsequently died and his legal heirs, on April 6, 1926, sold all the cypress, tupelo and sweet gum trees on the land to the defendants.

Shortly after acquiring this title, the defendants began to fell and haul the trees; plaintiff then filed the present suit and coupled therewith a writ of sequestration.

The main defense is the plea of prescription of ten years.

The property in contest in the case consists of trees. These trees were mobilized by the judgment of the District Court rendered in 1900, for that judgment recognized the ownership of the land in one person and the ownership of the trees in another person. The Act No. 188, p. 420, of 1904, did not change the status of these trees, for it provides that "standing timber shall remain an immovable * * * even when separated in ownership from the land on which it stands * * * ." The word "remain" makes it clear that where timber had previously been mobilized, it could not remain an immovable, because at the time the Act was adopted, it was not an immovable. It could not remain in a situation which it did not previously occupy. The terms of the Act and the previous jurisprudence both show that before the Act of 1904, where the ownership of the standing timber and of the land upon which it was situated, was in different persons, the standing timber was a movable. The language of the statute clearly applies in futuro and is not retrospective.

If the trees in this case are movables, then registry of the judgment of 1900, so far as that judgment decreed the title of the trees to be in plaintiff, could not serve as notice to innocent purchasers. The purchaser of a movable is not bound to look up the conveyance records to inquire into the title of his vendor. So that registry of plaintiff's title to the trees in the Conveyance records of Assumption was in no manner binding upon third persons.

The evidence shows that as soon as Louis Gros purchased the land upon which the trees were standing in 1903 and 1906, he went into possession both of the land and the trees; that he cut some trees, sold others on several occasions, and that he never suspected that any one else claimed title thereto. There is no evidence that plaintiff ever took actual corporeal possession of these trees, or ever exercised any act manifesting its control over or ownership of the trees.

The possession of plaintiff was the civil possession that flowed from the Court decree rendered in 1900, while the possession of Louis Gros was actual and corporeal from the year 1906 to the year 1926, when his heirs sold to the defendants. During these twenty years, Louis Gros as lawful owner of the land under a title which did not except the trees, and which presumably included them as an accessory to the land to which they were attached, acquired an absolute title thereto both under the prescription of three years, C. C. 3506, and the prescription of ten years, C. C. 3509 As owners of these trees under a prescriptive title, the heirs of Louis Gros made a valid and sufficient title to the defendants. Our learned brother of the District Court so found; his judgment is correct and should be affirmed and for the reasons stated it is so ordered.

## DISSENTING OPINION OF ELLIOTT, J.

The judgment in the suit of J. O. Delaune vs. F. B. Williams in the District Court of he Parish of Assumption, rendered December 10th, 1900, recognizes Williams as the owner of the timber in question and Deaune as the owner of the land. This Court holds that the effect of the judgment was to mobilize this timber. No authorities are cited in support of this conclusion, but I assume that the holding was influenced by the cases Citizens Bank vs. Wiltz, 31 La. Ann. 244; Lumber Co. vs. Sheriff, 106 La. 414, 30 South. 902; and Huie, Hodge Lumber Co. vs. Smith, 123 La. 959, 49 South. 655, and the French authorities therein cited, according to which, standing timber under the Code of Napoleon was mobilized when sold for the purpose of being cut down and removed from the land. The above cases are based on the theory that the provisions of the Civil Code of this state, Act 188 of 1904, not taken into account, and those of the Code of Napoleon on the subject of standing timber, are substantially the same; consequently should be applied in the same way. But I do not think them the same. I find them to be different to the extent, that it seems to me the same application is erroneous and that as a result the cases cited are not governing as to the case in hand.

In Citizens Bank vs. Wiltz a crop was seized in the enforcement of a privilege. A contest ensued as to what was subject to eizure and sale separate and apart from the land. The Court held that part of the crop could be seized and sold, but that seed cane or corn necessary for production, could not; quoting a French Commentator on the Code of Napoleon, the text of which is to he effect that in the case even of perfect and perpetual inherence to the soil, prodicts are movable in a certain case. Thus when grain, fruits or wood are sold separately from the soil, it is a sale of mov-

ables and the purchaser has only a movable right. These objects in consequence are only sold like products, like things distinct from the soil, and so far ought to be separated from it. In reality they are immovables; but they are sold like movables; the purchaser buying the things yet immovable, but under the condition and with the power to mobilize them. The opinion also states that the provisions of our Code are identical with Article 520 of the Code of Napoleon.

Smith vs. Huie-Hodge Lumber Co. was a suit to set aside a sale of standing timber for lesion beyond moiety. In that case the Court said, p. 963, that the French writers construing Article 1674 of the Code of Napoleon, which was very much like Article 2589 of the Code of this State, hold that when standing timber is sold in order to be separated from the soil, it is a sale of movable property and not subject to attack on account of lesion. The Court citing authorities bearing on the Code of Napoleon adds:

"And we should be disposed to adopt that view, were it not that in addition to the provisions of the Civil Code, which we have mentioned, we are confronted with Act 188 of 1904."

In Lumber Co. vs. Sheriff the case 106 La. 414, 30 South. 902, was approvingly cited; but the opinion also contains expressions to the effect that trees after being sold remain under our law, immovable until they are cut down.

The provisions of Article 465 of the Civil Code of this state and Article 520 of the Code of Napoleon are similar as to growing crops and fruit on trees and admit of the same application because the nature of crops and fruit is the same; but Articles 520 and 521 of the Code of Napoleon contain no provision equivalent to that contained in Article 465 of the Civil Code of

this state, according to which standing timber is immovable and considered part of the land to which it is attached, until it has been cut down.

Article 521 of the Code of Napoleon reads: "The cuttings of underwood of the ordinary kind or forest trees made up in regular faggots, only become movable in proportion as they are felled." The cuttings of underwood of the ordinary kind as commonly understood in this country, means timber growths under the size of trees, which grow under the trees and are ordinarily cut out for firewood. "Forest trees made up in regular faggots," evidently refers to trees that have been sold and are not to remain standing, except temporarily, but are to be soon removed like a growing crop. The situation contemplated by the Code of Napoleon is different from that established by our Code, according to which: Standings trees—before they are cut down, are immovable, and are considered as part of the land to which they are attached. As soon—as the trees are cut down—they are movables.

Our Code on this subject is so plain that it is not open to construction, C. C. Article 13, etc. The Code of Napoleon evidently has in mind, trees, that have been sold for the purpose of being soon removed like a growing crop, fruits on trees. Our Code makes growing crops, fruits on trees and standing timber all immovable alike and part of the land to which they are attached.

But a growing crop and fruits on a tree are mobilized when gathered; while the mobilization of standing trees does not take place until they are cut down. Under our Code, a growing crop and fruit on a tree, if sold, must, as a necessary consequence, due to their perishable nature, be soon removed from the land to which they are attached, otherwise they are lost; but it is not contemplated that standing timber, if

sold, must, as a necessary consequence, be soon cut down.

Leaving Act 188 of 1904 out of mind, the language of our Code on the subject indicates that such was not intended.

The compilers of our Code were familiar with the provisions of the Code of Napoleon on this subject in 1825 and purposely incorporated in our Code the present provision on the subject. The vast bodies of standing timber in this state at that time was a situation no doubt taken into account. The provisions of our Code on this subject are in conformity with the laws of the other States. Ruling Case Law, Vol. 17; Subject: Logs and Timber; Sections 4 and 5, p. 1068, and Sections 8 and 10, p. 1076.

The situation in the present case is also different from that contemplated by the Code of Napoleon and the French Commentators so far as I have been able to ascertain; also from the decisions Citizens Bank vs. Wiltz, 31 La. Ann. 244; Lumber Co. vs. Sheriff, 106 La. 414, 30 South. 902; Huie, Hodge Lumber Co. vs. Smith, 123 La. 959, 49 South. 655, in this: the Code of Napoleon deals with trees that have been sold for the purpose of being soon removed from the land, and in the cases cited, the trees had been sold for the purpose of being cut down. Delaune did not own these trees; he did not sell them to Williams. The judgment which recognized Williams as the owner of the trees and Delaune as the owner of the land, is silent on the subject of severance or partition.

Possession is naturally linked with the ownership. Civil Code Articles 3434 and 3435. The possession of the trees was therefore naturally in Williams, and that of the land in Delaune. The standing trees being, as a matter of law, considered as part of the land, and the judgment being silent on the subject of severance, it followed that Williams and Delaune were content for the timber to remain on the land, each owning and holding a separate part of an immovable in indivision.

It is, therefore, my conclusion, that these trees were not mobilized as a result of the judgment rendered, and as held by a majority of the Court herein. The conclusion of the Court that such took place is not in my opinion supported by any applicable authority and is erroneous.

Under the judgment rendered on December 10th, 1900, Williams and Delaune were joint owners of an immovable; Williams owning the timber and Delaune the land, and this joint ownership continued between them and their respective successors in title and will remain, until a severance takes place either as the result of an agreement between the co-owners or of a judgment of the court between them fixing a time when the timber must be removed from the land.

Kavanaugh vs. Frost-Johnson Lumber Co., 149 La. 972, p. 975, 90 South. 275, and other cases to the same effect.

The opinion of the Court herein assumes that these trees were included in the sales from Barilleaux to Louis Gros as an accessory of the land. I differ with them as to that matter. These trees are not called for in any of the titles emanating from Delaune. Being part of an immovable recognized as belonging to Williams which judgment was recorded on or about the time it was rendered in the conveyance books of the Parish of Assumption, it was necessary, in order for them to have been included in the sale to have been expressly mentioned in the acts of sale as objects sold. The object of every contract must be definite. Civil Code Articles 1779, 2438, 2474.

On this subject, Gray vs. Edgar Lumber Co., 138 La. 906, 70 South. 877, is a parallel case. In that case the owner of land sold the standing timber thereon and the purchaser recorded his title in the conveyance book. The owner of the land then afterwards sold it without reserving the trees and making no mention of them in the act. The purchaser of the land set up a title to the trees, claiming possession of them, and that they passed to him under his title.

The Court in deciding the case stated that it might well be doubted that George Walker ever intended to sell the timber to the plaintiff; but if such was his intention, the transfer was null as a sale of property belonging to another. On the question of possession the second clause of the syllabus reads as follows:

"Where such a sale was duly recorded and the vendee thereafter sold the same land without reservation to a third person, and the purchaser took actual possession of a small clearing on the tract; held, that such possession did not carry with it possession of the standing timber previously sold to defendant."

Another result of the joint ownership of Williams and Delaune and their respective successors in title is that a public possession can not be commenced by either side, as to the property belonging to the other until either have taken hostile possession of the other's property in such a way as to notify him of the fact. Otherwise, joint ownership remains and continues indefinitely until a severance takes place either as the result of the consent of the joint owners, or by virtue of a judgment between them ordering a severance and fixing a time for it to be accomplished.

Kavanaugh vs. Frost-Johnson Lumber Co., 149 La. 972, 90 South. 275; Liles vs. Pitts, 145 La. 650, 82 South. 735; Simon vs. Richard, 42 La. Ann. 842, 8 South. 629; Litton vs. Litton, 36 La. Ann. 348.

On the question of ownership in Louis Gros and his widow and heirs, the Court cites Civil Code Article 3506, which provides a prescription of 3 years, and Article 3509, which provides one of 10 years for movables, holding as I read the opinion that Louis Gros and his widow and heirs had become owners of the standing timber in that way.

These prescriptions are not pleaded by defendants.

"Courts can not supply the plea of prescription." C. C. Art. 3463.

Defendants plead a just title to the timber and the prescription of ten years under Civil Code Art. 3478—in support of their alleged title under which immovables are prescribed for against the true owner in ten years. The Court does not act on this plea, but applies against the rights of the plaintiff, the prescriptions applicable to movables which were not pleaded.

I do not think that should have been done.

Joint owners do not possess nor prescribe gainst each other under certain conditions; but suppose Louis Gros, and after him his widow and heirs, and the plaintiff, were not joint owners nor possessors, all that Louis Gros, and after him his widow and heirs, claim to have done, was to cut small trees and cord wood from the land as they saw proper, without reference or notice to plaintiff.

Under the settled jurisprudence of this State, such acts do not amount to a commencement and maintenance of actual possession of an immovable not called for by the title of the party.

Prevost Heirs vs. Johnson, 9 M. 123; McCarty vs. Foucher, 12 M. 17; Gardner vs. Leger, 5 La. Ann. 594; are among the earliest, and South Land Co. vs. Riggs

Cypress Co., 119 La. 193, 43 South. 1003; Frederick vs. Goodbee, 120 La. 783, 45 South. 606; Albert Hanson Lumber Co. vs. Baldwin Lumber Co., 126 La. 399, 52 South. 537; and Howell vs. Metropolitan Land Co., 127 La. 399, 53 South. 664, are among the latest decisions to the effect that such acts do not amount to a commencement and maintenance of actual possession of land not called for by the title of the party.

I, therefore, dissent from the opinion and decree of this Court herein, and contend that the judgment appealed from is erroneous and should be annulled, avoided and set aside and judgment rendered in favor of the plaintiff as prayed for.

---

## ON REHEARING

LECHE, J.  Plaintiff complains that we have erred in holding that the standing trees in suit became mobilized when it acquired the same as a distinct and separate estate.  Plaintiff did not own and does not claim ever to have owned the soil to which the trees were attached, the title to the soil being then in the author of defendants.  It has always been our conception of the law that when the owner of the soil or the immovable, sells any of its accessories, the accessories when sold become mobilized in anticipation by their change of ownership; that in order to form part of the realty or of the immovable, the attached accessories must also belong to the owner of the immovable; that one who owns crops or trees on the land of another only owns a movable.  In fact that is so true, that the Legislature in order to impress the character of immovability upon standing trees after the trees had gone out of the ownership of the owner of the land, found it necessary to pass the Act No. 188, p. 420, of 1904, and no other reason is

conceivable for the adoption and passage of that act.

Baudry-Lacantinerie in his "Precis de Droit Civil," Vol. 1, Art. 1421, commenting on Article C. N. 520, which corresponds to Article 465 of our Code, says in substance, that the fruits attached to the soil are considered movables when sold separately from the soil.  In fact, he says that the right of the purchaser of a crop or of standing timber, as that of a lessee, does not apply to the immovable, but only to the product of the soil, something distinct from the immovable to which it adheres. The purchaser only buys a movable.

Such, in fact, has always been considered the law in this State, until the adoption of Act 188 of 1904.  In the cases of the Globe Lumber Company vs. Keete Locket, 106 La. 414, 30 South. 902, and Citizens Bank vs. Wiltz, 31 La. Ann. 245, the Supreme Court recognized that the alienation of a crop or of timber by the owner of the land on which it was grown had the effect of mobilizing the crop or the timber.

That the purpose of the Legislature in adopting the Act of 1904 was to change and not to recognize the law, as it previously existed, is evident from the decisions of the Supreme Court in Lee Lumber Company vs. Hotard, 122 La. at page 856, 48 South. 286, Hyde vs. Barron, 125 La. 227, 51 South. 126, Morgan vs. O'Bannon & Julien, 125 La. 367, 51 South. 293.

Plaintiff cites in support of his contention of error on our part, Lange vs. Baranco, 32 La. Ann. 607.  That case involved the possession of a public franchise in the city of New Orleans.  A building was erected on public ground for the purpose of therein conducting a public market, the building to become city property after a certain time, the builder to be reimbursed

by market fees which he was authorized to collect in conducting the market. The property right at issue was not the ownership or possession of the building, but the right to enjoy the franchise. The authority cited in that decision for its support, New Orleans Nat. Bank vs. Raymond, 29 La. Ann. 355, is in reality in accordance with the law as construed by us in the present case.

The other grounds urged in support of the plaintiff's application for rehearing, are questions of fact which we still believe, were properly disposed of in the opinion heretofore rendered by us, as well as by the judgment of our learned brother of the District Court.

Rehearing refused.