BREAUX, C. J.
Plaintiffs brought this suit against the defendants to have their privilege recognized on property on which they made repairs in accordance with their contract with the city touching local assessment for improvement.
Said property was Situated on both sides of Rendon street from Canal to Toulouse street, and the work consisted in the construction of the brick sidewalk on both sides of the street part of the way.
Originally the claim was for $270.25. A certificate was issued by the city authorities to plaintiff for the amount on December 9, 1896, and was recorded the same month. After .this certificate had been issued by the city authorities, the court held in Barber Asphalt Co. v. Watt, 51 La. Ann. 1345, 26 South. 70, that the method followed in calculating the amount due by abutting property owners should be modified. Another certificate, after said decision had been rendered, was issued by the city to the plaintiff and the rule laid down in the said cited case was complied with. Reduced under the rule, the amount due plaintiff was $228.44.
Alexander Turegano and the Gulf State Land & Improvement Company were the owners of the property at the date the first certificate was recorded. Subsequently, the Sewerage & Water Board bought the property with this claim resting upon it.
Plaintiff sued the owners, the Sewerage & Water Board, for the amount. The latter denies that there was an incumbrance upon it. It avers that it had been bought by their vendor Thornwall Gaehet, on the 10th of January at tax sale, made by the city of New Orleans on said date, to collect the unpaid taxes for the years 1893 and 1894, assessed in the name of Turegano, as owner. And defendant avers that the said tax sale operated a cancellation of all incumbrances on the property.
Defendants called their vendor Gaehet in warranty. •
Gaehet answered the call in warranty, attacked plaintiff’s pledge and privilege as null, because he averred the certificate of assessment was not made out properly and timely recorded; moreover, he averred, if it had been made at all in form, it was erased and canceled by the effect of the city tax sale made in 1898.
¿Turegano, whose name figures as owner, not having paid his taxes to the city for the years 1893 and 1894, the city had the property sold for taxes, and late in 1897 the proper *363 ty was adjudicated to Gachet, but the deed before mentioned was executed in 1898.
The property was sold for taxes under Act No. 85, p. Ill, of 1888.
On appeal, our learned brothers of the Court of Appeal, in an able opinion, held that plaintiffs were entitled to judgment.
From that judgment defendants applied to this court under its supervisory jurisdiction to have the judgment of the Court of Appeal reviewed.
The first ground of discussion is that the “certificate of performance” issued under the provisions of Act No. 73, p. 116, of 1876, was null.
As relates to form, those who issued the certificate complied with all the requirements.
Defendant argues that the assessment for paving is virtually a tax, and that those who work for the city and for the front proprietors in order to acquire a right must follow the law closely and accurately.
We have found no decisions in our researches extending the rule touching tax assessment to local assessments for paving.
It is necessary to comply with the law; but if, owing to some slight mistake or oversight, the amount of the recorded claim should be overstated, it would hardly be just to hold that the whole claim is thereby lost. Here the latter amount includes the less. This question was considered and passed upon in the following cases: Ellis v. Sims, 2 La. Ann. 251; New Orleans v. Ferriere, 17 La. Ann. 183; Bonnafe v. Lane, 5 La. Ann. 225; Succession of Pate, 6 La. Ann. 242.
It would be different if thig calculation had been adopted after the Watt Case was handed down. It was not. It was made out before. The certificate was duly and timely recorded. Plaintiff is entitled to the amount.
The error in good faith in claiming more than was due does not render the whole claim null. Walden v. Grant, 8 Mart. (N. S.) 565; Mullan v. Creditors, 39 La. Ann. 397, 2 South. 45.
To return for a moment to the Watt Case, it did not hold that a contractor could not reform his certificate so as to comply with its decree.
The consideration of defendant’s complaint of insufficiency of description of the property has no merit. Moreover, the pleadings do not present that issue; on the contrary, defendants admitted that they purchased the property described in plaintiff’s petition from Tliornwall Gachet, and warrantor avers that he acquired the same property from the city at tax sale. It is fully and completely identified as relates to description.
It is next urged by defendants and warrantor that the tax sale made for the payment of city taxes for the years before mentioned had the effect of annulling plaintiff’s claim.
Now as relates to security, the third section of Act No. 73, p. 117, of 1876, provides that the cost of the improvement shall be a real charge on the property and that “it shall be considered and treated as pledged for payment of the amount due; that it shall constitute a lien or privilege upon the abutting property.”
Surely, under the terms of this statute, no one will deny that the contractor’s claim is secured as laid down in the statute, and no further. There are no statutes amending or setting aside the provision of the act of 1876, as before stated. No one will reasonably deny that pledges and privileges and tax mortgages are the creatures of positive law. That as to taxes there are no securities for their payment except those provided in terms. Nothing as relates to taxes is left to uncertain implication.
The law-making power may provide that the property assessed for taxes and sold' shall pass free of all mortgages and liens; but unless it thus provides they do not pass free of mortgages and liens. The law may *365 also limit the extent to which the incumbrance shall remain on the property.
The cited act under which the property was sold provides, quoting:
“If not redeemed, such record in the conveyance or mortgage office shall operate as a cancellation of all conventional and judicial mortgages.”
The pledge and privilege held by plaintiff was neither the one nor the other. How, then, can it be held that it can be canceled under the terms of the statute? Surely it will not be contended that this pledge is to be destroyed by mere implication.
The contention is, however, that these words, “conventional and judicial mortgages” are-only illustrative, and not limitative, and that under these words other securities are struck down as well.
This in effect reads into the statute other words.
The rules relating to interpretation of contracts and of statutes are the same. Liber’s Hermeneutics.
Suppose a person has acquired the right on the purchase of property to have the judicial and conventional mortgage erased, no one would have the temerity to contend for a moment that by implication he would have the right to have a statutory pledge on the property canceled.
There seems to be some method in the statute cited above for its thirty-third section (page 124) provides that the legal mortgage to secure payment of the taxes shall prime other incumbrances and preferences. It follows that the property must be sold without regard to subsequent claims such as may remain under section 63 (page 133) of the statute. And then again when the property has been sold directly for taxes, if adjudicated to a third person, it passes subject to the pledge in question. It is adjudicated to this bidder for an amount equal to the tax. If, however, no bidder chooses to pay the amount of the taxes it is adjudicated to the state. The tax collector is directed to thus adjudicate it. It falls within Act No. 80, p. 88, of 1888, adopted the same, day that Act No. 85, p. Ill, was adopted. Act No. 80 is well known, and is a far-reaching act.
If the property has been adjudicated to the state, the state has the right to sell it, free from all incumbrances whatsoever. Section 5, Act No. 80, p. 90.
The whole proceeds of the sale will then belong to the state. It is her property; she has absolute ownership.
There is certainly a decided difference in regard to cancellation in these two acts. Each should be interpreted as it reads. The words are plain and unambiguous. In any event the tax debtor cannot escape from the payment of his debt. He is only given a little time before his pledge is struck down.
The state says in effect to the tax debtor and to his creditor: “The holder of a statutory pledge shall not be affected by the sale if a third person buys and pays the taxes due upon the property. If no third person chooses to accept those conditions the property shall become mine, and I will sell it free from all incumbrances.”
The city is one of the contracting parties in matter of the local assessment. There was unusal delay in collecting her taxes. Years afterward she or those who held from her claim a cancellation of a pledge granted through her agency.
There are two remaining propositions that will be merely stated as they require no discussion :
If a statute directs that a conventional and judicial mortgage be canceled, it does not embrace pledges and privileges; on the contrary, it excludes them.
“Expressum facit cessare taciturn.”
Lastly, it is evident that the words were not used in a relative, generic, or expansive sense. When the lawmaker said, “judicial and conventional mortgages” he did not *367 mean to say “and statutory pledge.” It does seem that to thus hold would render all words ambiguous and uncertain in signification. *
The following is an extract from the carefully prepared opinion of the court of appeal (Moore, J., was the organ of the court):
“Whether the purchaser at a tax sale takes only the interest of the owner in' whose name the lancéis, or ought to have been assessed, burdened with all the incumbrances existing thereon at a given period prior to the sale; or whether the purchaser takes it free therefrom, is regulated by statute.
“There is no common-law rule which makes the levy of taxes ex proprio vigore, a lien on the property of the taxpayer, nor does it arise by implication from the power to tax, nor does the obligation to assess taxes give a lien on the property on which such taxes should be assessed. Such liens owe their existence wholly to statute, and their duration, limitation, and priorities must be determined by the statute creating them.
“As it is within the power of the Legislature to make the tax lien superior to any other security, mortgage, incumbrance or lien arising either before or after the assessment of the tax, so, also, is it within its constitutional power to declare that at once th.e property is adjudicated for taxes, or after a fixed and given time in the future, and under such conditions as it may impose, the property passes to the purchaser free of all incumbrances of every nature ; or that it passes subject to them; or that it passes subject only to a certain class or character of incumbrances; or that only a certain class and character of incumbrances shall be canceled by the sale.
“In the exercise of this power the Legislature of this state did, by section 33 of the revenue law of 1888 (Act No. 85, p. 124), approved July 12, 1888, this being the law under which the city taxes due on the property in question for the years 1893 and 1894 were levied and under which the property was sold by the city on September 25, 1898, enact: ‘that from the day said tax roll is filed in said mortgage office it shall act as a lien on each separate piece of real estate thereon assessed, shall be subject to a legal mortgage after the 31st day of the current year for the payment of the tax due on it, but not for any other tax, which mortgage shall prime and outrank all the other mortgages, privileges, liens, incumbrances, or preferences, except tax rolls of previous years.’
“In section 63 of this act (page 133), and whether because the lawmakers conceived that, unless otherwise provided by statute, a tax title conveyed to the purchaser of the property sold for taxes nothing but the interests of the delinquent taxpayer, the recorded burdens on the property remaining extant thereon, desired, therefore, to make such sales operate as a cancellation of a certain class of recorded incumbrances on the property; or whether they believed that a tax title ex proprio vigore, and without legislative will, operated the cancellation of all incumbrances of every class, nature or kind, and therefore wished to limit and restrict the cancellation to only a specific class or character of recorded incumbrances, it is provided that after the expiration of the period of redemption, which is fixed at one year, beginning on the dhy the tax deed is filed for record in the conveyance or mortgage office in the parish in which the property is situated, the registry of such tax deed, if the property be not redeemed, shall operate as a cancellation of all conventional and judicial mortgages, and it shall be the duty of the sheriff or tax collector to notify the mortgage creditors 10 days previous to such sale.
“It is under this section of the act that the defendant and the warrantor base their contention that plaintiff’s asserted lien and privilege was canceled as the result and by operation of the tax sale, supra.
“The argument on this branch of the case, to quote from the brief of the warrantor, is: ‘That article 3286, Oiv. Code, provides that there are three kinds of mortgages; i. e., conventional, legal and judicial. That a paving contract is clearly not a legal mortgage, nor is it a judicial mortgage, therefore, it must be conventional. That the very life and beginning of the asserted incumbrance is the contract between the plaintiff and the city; the latter acting for and on behalf of the owner of the property in question and those similarly situated. That being conventional, it comes within the letter and spirit of the statute, and was, there fore, canceled and wiped out by the tax sale.’
“The fundamental error of this argument is that it confounds a ‘lien and privilege’ with a ‘mortgage.’ There is a vast difference in law between them. Plaintiffs here are asserting no ‘mortgage’ on the property; therefore, no question arises as to the kind of mortgage which they have. AVhat they claim is that, flowing from the nature of their contract with the city and from the law applicable thereto, they have a ‘real charge in and upon the property,’ a ‘pledge’ thereof, and a ‘lien and privilege thereon,’ and this is precisely what is granted to them by section 3, Act No. 73, p. 117, 1876, which provides, inter alia, ‘* * * that the cost of said improvement, paving or1 repairing, grading or regrading, due as aforesaid by the owner or owners of the abutting real property, shall be and is hereby constituted a real charge in and upon said real property, to whomsoever same may be transferred or conveyed, and the same shall be deemed, considered and treated as pledged for the payment of the said cost, * * *; that said cost of said improvement, etc., shall constitute a lien or privilege upon said abutting property until paid, * * *.’
“As we have seen, the revenue act of 1888, supra, does not make the tax sale operate the cancellation even of all mortgages, but only of all conventional and judicial mortgages. The *369 legal mortgage, it would appear, is excluded. Harney v. Quaglino, 1, Court of Appeal, 230, and beyond all doubt, ‘pledges,’ ‘liens and privileges’ are not included. Tnclusio unius est ex-■clusio alterius.’
“To the argument that it is repugnant to the ■spirit of the law that a tax sale should not operate the cancellation of every burden or incumbrance on the property, the answer is that it is not so nominated in the law, quoad tax sales ■made under the revenue law of 1888, supra, and we are admonished that when a law is clear and free from ambiguity, as the section of the revenue law cited is, the letter is not to be disregarded under the pretext of preserving its spirit. Civ. Code, art. 13.
“However, it is manifest that the limitations in the revenue act of 1888 to the two specifically indicated character of the mortgages, which the act declares shall be canceled as the result •of the registry of a tax deed to property sold for taxes under that act, was inserted and incorporated therein ex industria by the lawmakers. This is evidenced and made patent, at least, by analogy, when we come to consider similar and contemporaneous legislation concerning the sale of property, not under revenue acts for the collection of delinquent taxes, as in this case, but concerning the sale of property owned by the state; the title to which it had acquired as a result of forfeiture for the nonpayment of taxes. Such an act is the act which has come to be known as the ‘Ironclad Act,’ being No. 80, p. 88, of the Acts of 1888, ■and approved on the same day that the revenue act of that year was approved. This is an act providing for the sale of property bid in and adjudicated to the state for the taxes of 1880 and subsequent years. It provides that within two months after the expiration of the year in which property must be redeemed, the property so adjudicated to the state shall be offered for sale; but it also provides that the title which it will thus give to the purchaser shall operate to a far greater extent in the way of extinguishing and canceling burdens and incumbrances on the property so sold, than where the property is not owned by the state, but owned by the delinquent taxpayer is sold under a revenue act for the purpose of gathering the taxes due thereon. Here is the section referred to, section 5, p. 90: ‘That all sales under this act ■shall vest in the purchaser an absolute and perfect title to the property conveyed in the deed of sale, without any claim thereto by any former owner and free of all mortgages, liens, privileges, and incumbrances whatsoever except all ■city and municipal taxes.’
“We need not inquire into the motive or reasons which influenced the Legislature in making this difference in the respective tax deeds under the two acts, supra; but if a consideration is to be sought for. it is to be found in the simple fact that in the sale by the state of property forfeited to it the purchaser may be required to pay the value of the land to the state, which may be far in excess of the amour1 of taxes and penalties for the nonpayment of -.which the land was forfeited. Therefore, in this event, the purchaser is fairly entitled to full protection. Whereas, when property is sold for the purpose of collecting the taxes due thereon, the sale cannot be made for any amount whatsoever beyond and in excess of the taxes, penalties, and costs due thereon, which may be infinitesimally small as compared with the value of the land. In this event the same measure of protection, so far at least as incumbrances on the land are concerned, is and ought not to be given the purchaser.”
This decision applies exclusively to statutory pledge in assessment matters. It is especially sui generis!
For these reasons the rule nisi is recalled, and the applicants’ demand is rejected at their costs, and their petition is dismissed.
NICHOLLS, J., concurs in the decree.
See dissenting opinion of PROVOSTY, J., 41 South. 652.