## CONSERVATIVE HOMESTEAD ASS'N v. GUGLIELMO.*

### No. 14569.

Court of Appeal of Louisiana. Orleans.
June 12, 1933.

Nat W. Bond, City Atty., and Henry B. Curtis, Asst. City Atty., both of New Orleans, for appellant.

Weiss, Yarrut & Stich, of New Orleans, for appellee.

JANVIER, Judge.

This matter comes before us on appeal by the city of New Orleans from a judgment making absolute a rule taken by Conservative Homestead Association, purchaser at foreclosure sale of certain real estate, which rule has as its object the cancellation from the mortgage records of certain paving lien inscriptions.

The homestead association, on October 15, 1927, made to Pasquale Guglielmo a loan secured by vendor's lien and mortgage. At that time the street on which the mortgaged property is located had been paved, but there had been recorded in the office of the recorder of mortgages for the parish of Orleans neither the ordinances under which the said paving had been done nor the statements of assessment showing the amounts charged against the said property, although the ordinances in question—there being two—had been adopted many months before, and although the statements of assessment, of which there were also two, had been dated October 7, 1926, more than one year before the said loan was made.

Attached to the act of mortgage by which the loan was secured are the usual conveyance and mortgage certificates, and, according to the certificate on which paving inscriptions should be shown, there were no paving ordinances and no paving assessments recorded against the said property. In fact, it is admitted that the said ordinances were not recorded until June 22, 1928, and that the said statements of assessment were not recorded until July 23, 1928.

Guglielmo failed to make payment in accordance with the obligation assumed in the note and the act of mortgage, and, on August 2, 1932, the homestead association instituted foreclosure proceedings, and at the resulting sale purchased the property for an amount less than the amount of the mortgage debt. The certificates obtained by the civil sheriff in connection with the sale showed that the two paving ordinances and the two statements of assessment had been recorded in the office of the recorder of mortgages long after the said loan had been made, but before the sale at foreclosure.

Thereupon the homestead association, purchaser at the said sale, instituted this rule to compel the erasure of those inscriptions. The contentions of the homestead association are, first, that it is an innocent third party, and cannot be affected by unrecorded paving liens, and that, since the said liens were

*Rehearing denied June 29, 1933. Writ of certiorari granted July 17, 1933.

not recorded until long after the loan had been made in reliance upon clear public records, the rights acquired as mortgagee cannot be affected by the subsequent recordations; and, second, that the paving ordinances in question were adopted and the paving contracts were let under the authority of the provisions of Act No. 105 of 1921 (Ex. Sess.) p. 225, § 48 of which requires that the city of New Orleans, in order to secure a first lien for paving assessments, must "upon completion of each case of paving" cause the commissioner of public property to issue a statement of assessment, which, within ten days after its issuance, must be furnished to the commissioner of public property, who, in turn, must, within ten days of its receipt by him, cause it to be recorded in the office of the recorder of mortgages for the parish of Orleans; that the provisions of the said section of the said statute are mandatory and not merely directory; and that, consequently, the failure of the city to cause the said statements of assessment to be recorded within the twenty days next following the day on which they were issued by the commissioner of public property renders null and void any liens which the city might otherwise have had.

Thus the contention of the homestead association is two-fold: First, it maintains that the city has no lien of any rank at all, since its right to any lien depends entirely upon its strict compliance with the requirements of the act; and, second, that, if the city has any lien, such lien cannot in any way affect the claim of the mortgage creditor, who is an innocent third party, because to permit the unrecorded claim of the city to have priority over the duly recorded mortgage would be repugnant to section 19 of article 19 of the Constitution of the state of Louisiana, in which it is provided that: "No mortgage or privilege on immovable property, or debt for which preference may be granted by law, shall affect third persons unless recorded or registered in the parish where the property is situated, in the manner and within the time prescribed by law. * * * *"

The city of New Orleans maintains that the provisions of the statute with reference to the time given for the recording of paving liens are directory only and not mandatory, and that wherever such assessment is recorded the lien comes into existence whether the recordation is effected within the time specified in the act or not, and the city also contends that the homestead association is not a bona fide third party.

We find three cases in this state bearing closely on the matter at issue: Walker, Jr., v. Spence et al., 16 La. App. 317, 134 So. 271, 273, State ex rel. Wheless Investment Co. v. City of Shreveport et al., 142 So. 641, both decided by the Court of Appeal for the Second Circuit, and City of Shreveport v. Urban Land Co., 148 So. 256, 257, decided by the Supreme Court on March 27, 1933, not yet reported [in State report].

In Walker v. Spence, supra, under a statute (Act No. 187 of 1920) similar in many respects to that portion of the act of 1921, which we have referred to, the municipal authorities of the town of Cedar Grove undertook to pave Caddo avenue in that town. When the work was finished, the necessary ordinance of acceptance was adopted, but from that ordinance, in which the paving assessments were levied against the abutting properties, there was inadvertently omitted the property which was concerned in that suit. A few days later municipal authorities discovered the omission and adopted another ordinance, which ordinance, however, was not recorded until about two and a half years later. In the meantime the mortgage holders—the mortgage having been executed prior to the paving of the street—were forced by the default of the mortgage debtor to accept title to the property, and, when they did so, a title examination showed that there were no paving liens recorded. Walker acquired the paving claim of the town, and he brought suit against the owners of the property. The owners resisted the claim, asserting that, since the statute had not been complied with, in that the ordinance had not been recorded "within ten days after its passage," all rights of the town had been lost, and any lien had been rendered null and void because of the failure to record the ordinance within the time specified in the statute. The court said that, when the owners acquired the property, they "were not bound, under the settled jurisprudence of this state, to look beyond the records to ascertain if there were any secret, unrecorded liens resting against it. Const. 1921, art. 19, § 19; McDuffie v. Walker, 125 La. 152, 51 So. 100." So far as the facts are concerned, we find no difference in principle between that case and this, except that there the owners had, at the time the paving was undertaken, been the holders of the mortgage, whereas, in the case at bar, the homestead association did not become in any way concerned with or interested in the property until after the paving was completed, and therefore it was even more prejudiced by the failure of the city to record its privileges than were the owners in the Walker Case.

But counsel for the city of New Orleans maintains that that case can be distinguished from this because of differences between the two statutes, to wit, Act No. 187 of 1920, under which the Walker Case arose, and Act No. 105 of 1921 (Ex. Sess.), which is the statute involved here.

The contention is that, under the act of 1920, which is the statute under which municipalities other than the city of New Orleans were at that time authorized to undertake paving work and to collect for same

from property owners, the municipalities, in addition to their rights to record privileges acquired against the respective portions of real estate involved, were entitled to proceed personally against the respective owners—that the privilege granted was merely a secondary security for the payment of the personal obligation—and that, thus, the loss of the privilege would not deprive the municipality of its right to assert its claim, which it might do against the property owner, whereas, under the act of 1921, the city of New Orleans, in collecting for its paving charges, may look only to the property itself. It is thus argued that if, by the loss of its privilege, the city of New Orleans loses the right to look to the property itself, it loses all right, since it may not proceed in personam against the owner who was responsible for the paving at the time of completion.

We have compared most carefully the two statutes to which we have referred, and we have also compared with them Act No. 168 of 1926, a later statute than that of 1920, but on the same subject-matter, and we have particularly attempted to analyze the act of 1920.

In City of Shreveport v. Urban Land Co., supra, in which the Supreme Court answered a certain question which had been previously propounded by the Court of Appeal, the court used language which, if the act of 1920 cannot be distinguished in principle from that of 1921, will be decisive of this case.

In that case the question presented was very similar to that now before us. There the ordinance under which the paving had been done was authorized by Act No. 187 of 1920, which, in section 4, provided that: "A certified copy of such ordinance contained in said assessment shall, within ten days after it is passed, be filed and recorded in the office of the recorder of mortgages in the parish in which said assessed property is located, and the same when so filed and recorded shall operate as a lien and privilege in favor of the city or town or its transferees, against the real estate and the railroad tracks therein assessed, which lien and privilege shall prime all other claims except taxes."

The ordinance in question was not recorded until fourteen days after it had been adopted and the owner of the property which was involved resisted the claim of the city of Shreveport, contending that, since the statute required that the ordinance be recorded within ten days, the privilege which the city, by complying with the statute, might have asserted, never came into existence. The question which the Court of Appeal certified to the Supreme Court was: "Is it necessary that the ordinance be recorded within ten days in order to bring into existence a lien and privilege in favor of the city against the abutting property which has been assessed with the cost of paving in the ordinance?"

The Supreme Court answered the question in the negative, holding that the failure to record the lien within the time set forth in the statute did not prevent the city from asserting its claim against the property of the owner.

Counsel for the city of New Orleans relies upon that decision, and confidently asserts that it requires that we now dismiss the rule of the homestead association and permit the inscriptions to remain as an incumbrance against the property involved.

However, a reading of the entire answer of the Supreme Court discloses plainly that it is authority against the contention of the city of New Orleans, and the very plain distinction between that case and this is that there title to the property was not transferred to a third party, nor did the rights of any third party as mortgage holder come into existence, and, in fact, it was the same owner which was possessed of the property at the time of the paving, which later, after the oversight of the city of Shreveport, attempted to take advantage of that oversight, although it had been in no way prejudiced thereby.

While the Supreme Court said that the claim of the city against the property owner could not be affected by the failure to record, the court very plainly expressed the view that, if the rights of an innocent third party had intervened, then the rights of the city of Shreveport would have been lost, or, at least, have been subordinated to the rights of the innocent third party. The court said: "According to the plain and unambiguous letter of the act the lien and privilege comes into existence upon the filing and recording of the ordinance levying the assessment in the mortgage records of the parish. It is the filing and recording of the ordinance which creates the lien and privilege and the lien springs into existence the moment the ordinance is filed and recorded. The act does not say, and we think there is no reason for construing it to mean, that no lien shall exist unless the ordinance is filed within ten days from the date of its passage. The act says that the ordinance 'when so filed and recorded shall operate as a lien.' We construe this to mean that the lien comes into existence whenever or at whatever time the ordinance may be filed and recorded."

If the above paragraph stood alone, it would be authority for the view that there could be attached no importance to the time of recordation, but following that paragraph is other language which squarely holds that, although the lien comes into existence at the time of the recordation, whether within or without the period stipulated in the statute for recordation, if the recordation is made after the expiration of the period fixed, then the lien, though it comes into existence, is

subordinate to such other claims as may have been previously recorded.

We refer to the following language: "That part of section 4 of the act which provides that the ordinance levying the tax or local assessment shall be filed and recorded within ten days after the date of its passage, must be read and construed with reference to and in connection with the general registry laws of the state, which are found in the Civil Code. When so construed, its meaning and purpose are apparent. The specified period of ten days for registering the ordinance has nothing to do with the creation or existence of the lien. But the purpose in specifying the time within which the ordinance shall be recorded was to establish the order of priority of the claims to the property and to operate as a notice to other creditors as well as to purchasers and encumbrancers; that is, the delay specified has to do only with the effect of registry as relates to third parties."

█The answer of the Supreme Court made in that case, unless there is a distinction in the principle involved between the act of 1920 and the act of 1921, requires that we hold that, although the liens of the city of New Orleans came into existence when the statements of assessment were recorded on July 23, 1928, they were subordinate to the rights of the mortgage holders, whose rights were fixed when, on October 15, 1926, they made the mortgage loan in reliance upon clear public records. And we cannot distinguish in principle between the two statutes. Referring to the act of 1920, the Supreme Court said: "According to the plain and unambiguous letter of the act the lien and privilege comes into existence upon the filing and recording of the ordinance levying the assessment in the mortgage records of the parish."

That identical statement may be made concerning the act of 1921.

The same may be said with regard to the requirement that recordation be effected within a specified time, except that in one statute the time is ten days, whereas in the other it is twenty days. In the act of 1920 it is provided that the ordinance shall be filed, and that "the same when so filed and recorded shall operate as a lien and privilege," etc. In the act of 1921, the language is practically the same, for in section 48 we find that "from the date that the said statement of assessments is filed in said mortgage office it shall act as a first lien and privilege," etc.

If there is any distinction in principle between the two statutes, we have been unable to find it.

The argument that, if the lien has been lost, the city will not be able to collect for paving from any one is very appealing, but the answer is that there was available to the city a plain method of procedure under which it could, had it followed that method, have made absolutely certain of collecting for the paving. On the other hand, the purchaser of the property was justified in relying upon the clear public records. The evidence shows that, in making the loan, there was taken into consideration the fact that the street was paved and that there was no paving incumbrance recorded against the property. We find no evidence to show any bad faith on the part of the homestead association when it made the loan.

█ The principle which the Supreme Court followed in the Urban Land Company Case will save to the city of New Orleans its rights even where the recordation is tardily made, so long as the property is not transferred, and, even where the rights of a mortgagee come into existence in the interim, the rights of the city will be subordinated only to the rights of the mortgagee, but will not be entirely defeated.

█ We do not agree with the city of New Orleans that the homestead association is not a bona fide third party. The record shows that, when the loan was made, the officials of the homestead association had no knowledge of the existence of any paving claim due to the city, and it shows that they took into consideration, in making their loan, the fact that the value of the property was enhanced by the fact that the street on which it was situated was paved. The record fails to show any actual or constructive knowledge in the homestead officials of the fact that the paving had not been paid for.

Believing that the decision of the Supreme Court in the case referred to is authority for the views which we have expressed, we cannot do otherwise than approve of the judgment rendered below.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed.

Affirmed.