## McKELLAR v. DIXIE INV. CO., Inc., et al.
## No. 4944.

Court of Appeal of Louisiana.
Second Circuit.
Feb. 5, 1935.

L. Percy Garrot, of Shreveport, for appellants.

Mabry & Carstarphen, of Shreveport, for appellee.

MILLS, Judge.

Plaintiff, holder of certain paving assessment certificates, brings this suit to recover their amount, with interest and attorney's fees, against the Shreveport Natatorium & Amusement Company, Incorporated, maker of the instruments, and owner of the property affected by the paving lien at the time of its accrual, and the Dixie Investment Company, Incorporated, purchaser of the same property at city and parish tax sales recorded subsequent to the recording of the paving liens. The only contested point in the case is the ranking of the paving lien and the tax deeds.

Exceptions of no cause or right of action were filed by both defendants and overruled by the lower court. Judgment by default was rendered against the natatorium company, and on the merits against the investment company, which has appealed. As its attorney does not urge the exception in his brief, we assume that it desires a decision on the merits which involve the same issue.

The case is submitted on the following agreed statement of facts.

"1. That Miss Mary Belle McKellar, plaintiff in this suit, purchased from the City of Shreveport, the paving notes and certificates described in her petition, paying therefor the face value of same, and that she acquired said paving certificates for value and in due course, and before maturity; that at the time said paving certificates were purchased from the City of Shreveport said certificates were properly endorsed by the City of Shreveport 'without recourse.'

"2. That the amount due plaintiff on the said paving certificates is the sum of $1,012.86, with 6% per annum interest thereon from January 3rd, 1931 until paid, together with 10% attorneys' fees on the principal and interest, plus costs.

"3. That the Shreveport Natatorium & Amusement Co., Inc., owned the property at the time the paving assessment was made on same, and said certificates were signed by the said Shreveport Natatorium & Amusement Co., Inc.

"4. That ordinance No. 149 of 1929 of the City of Shreveport, which ordinance levied the paving assessment on the property described in the plaintiff's petition, was adopted by the Commission Council of the City of Shreveport on December 24th, 1929, and recorded on January 9th, 1930, in Mortgage book 185, page 734, et seq. of the Mortgage Records of Caddo Parish, Louisiana; that

the paving certificates sued on were recorded in book 178, page 511 of the Mortgage Records of Caddo Parish, Louisiana, under date of January 14th, 1930.

"5. That the first of said series of paving certificates, being No. B-20366, due one year from January 3rd, 1930, in the principal amount of $337.62, has been paid and, being marked paid by plaintiff, was delivered to the Shreveport Natatorium & Amusement Co., Inc., but has not been canceled from the Mortgage Records of Caddo Parish, Louisiana.

"6. That the paving assessments, as described in plaintiff's petition, were levied by the City of Shreveport pursuant to Act No. 187 of the General Assembly of the State of Louisiana for the year of 1920, and the amendments thereto.

"7. That the Shreveport Natatorium & Amusement Co., Inc., purchased the property described in plaintiff's petition from Paul Angelo, Dr. Arthur Lemoine and David Garfinkel on July 13th, 1922; the deed transferring the property being recorded in Conveyance Book 173, page 211 of the Conveyance Records of Caddo Parish, Louisiana.

"8. That the Dixie Investment Company, Inc., purchased said property at tax sale from the City of Shreveport covering taxes for the year of 1931 in the amount of $209.80, said deed having been recorded on December 28th, 1932, in Conveyance Book 299, page 310 of the Records of Caddo Parish, Louisiana.

"9. That the Dixie Investment Company, Inc., purchased said property at tax sale from T. R. Hughes, Sheriff & Ex-Officio Tax Collector of Caddo Parish, Louisiana for the year of 1932, amounting to $238.05; said deed having been recorded on October 15th, 1933, in Book 299, page 403 of the Conveyance Records of Caddo Parish, La.

"10. That at the time of the filing of this suit the Dixie Investment Co., Inc., was the record owner of said property.

"11. That Paul Angelo, David Garfinkel and Arthur Lemoine purchased the property described in plaintiff's petition from the Consolidated Sanitarium Company, Inc., under date of June 22, 1922, which deed was recorded in book 170, page 535 of the Conveyance Records of Caddo Parish, Louisiana on the 22nd day of June, 1922; that the consideration mentioned in said deed was the sum of $40,000.00; $15,000.00 of which amount was paid in cash and the balance is represented by one vendor's lien note for $25,000.00,

due one (1) year from date; that there is now due on said note a balance of approximately $12,000.00, plus interest and attorney's fees; that said note is owned by the Dixie Investment Company, Inc.

"12. That said mortgage was re-inscribed on February 16, 1932 in the Mortgage Records of Caddo Parish, Louisiana; same having been recorded in book 200, page 395 of the Mortgage Records of Caddo Parish, Louisiana.

"13. That the Dixie Investment Company, Inc., is the holder of one tax subrogation covering and affecting the property involved in this case; the subrogation being for $328.25, dated November 9, 1932."

The opinion of the trial judge on the exception, which covers the single question on the merits, follows:

"This is a suit instituted by a purchaser of certain paving certificates against the Shreveport Natatorium and Amusement Company who owned the property at the time of the paving assessment, and against the Dixie Investment Company, Inc., the purchaser and present owner of the property under tax sales, all for the foreclosure of the paving lien.

"An exception of no cause or right of action was filed by both defendants. The paving certificates are dated January 3, 1930. An ordinance was adopted by the City Council of Shreveport on December 24, 1929, and recorded on January 9, 1930, after the expiration of a period greater than the statutory ten days.

"The property was purchased by the defendant Dixie Investment Company first at city tax sale on December 28, 1932, for the taxes of 1931; and then again for State and Parish taxes October 26, 1933, for the taxes of 1932. The question is therefore squarely presented as to whether or not the paving lien primes the tax sale when the lien for the taxes arose after the recordation of the paving ordinance.

"As to the Shreveport Natatorium and Amusement Company, Inc., in view of the fact that the paving lien notes were signed by this defendant at the time it owned the property, it is still liable on the personal obligation even though it has been divested of title to the property, and therefore its exception of no cause or right of action is overruled. Conservative Homestead Ass'n v. Guglielmo (La. App.) 148 So. 737.

"The defendant Dixie Investment Company, Inc., is not personally responsible, it having neither owned the property at the time of

the paving assessment nor having signed the notes; but it is now the owner of the property by virtue of the tax sales above described.

"Counsel for this defendant takes the position that a tax sale vests title in the purchaser free and clear of all encumbrances, particularly citing the case of Frederick v. Goodbee, 120 La. 783, 45 So. 606. Counsel also contends that the liens and privileges· are stricti juris, creatures of statutes and enjoy only the rank which the statute gives them; and he cites the wording of Act No. 187 of 1920, under which the paving liens were issued, which provides that when such liens are properly recorded they operate against the real estate, etc., 'which lien and privilege shall prime all other claims except taxes.' Section 4.

"The statute under which tax sales are held is Act No. 170 of 1898, of which section 63 (as amended by Act No. 228 of 1932, § 1) has to do with the recordation of the tax sale and the effect of such recordation upon other encumbrances. To quote the act in part:

"'* * * and if not redeemed, such record in the conveyance or mortgage office shall operate as a cancellation of all conventional and judicial mortgages; provided that, whenever a sale shall be made at the instance and request of a subrogee as provided in section 89 of this Act, the recordation in the conveyance or mortgage office of the tax deed executed by the tax-collector to the purchaser shall operate as a cancellation of all liens and privileges, as well as of all conventional and judicial mortgages, recorded against the property sold, except the liens and privileges for taxes and paving and other assessments due the · State or any political subdivision thereof which shall be governed by existing laws.'

"The case of Frederick v. Goodbee, relied upon by exceptor, emphasizes the fact that a tax title cancels all kinds of claims in and to the property; but that as to encumbrances thereon, it operates as a cancellation of conventional and judicial mortgages only.

"Conventional and judicial mortgages do not include liens, privileges and other encumbrances not strictly within the definition of conventional and judicial mortgages. This was made clear in the case of Moody & Co. v. Sewerage and Water Board, 117 La. 360, 41 So. 649, and on that point the case has been reaffirmed several times, particularly in the case of Conservative Homestead Ass'n v. Conery, 169 La. 573, 125 So. 621. The Moody case involved a question identical with the one now before the court, except for the fact that the statute under which the paving lien arose in the Moody case is ·silent on the matter of taxes, whereas the present suit excepts taxes from the rank of the privilege.

"Recent cases have made it clear that where the paving ordinance was recorded late, prior existing liens and encumbrances were not affected thereby; but that the lien actually attached to the property at the time of recordation. City of Shreveport v. Urban Land Company (La. App.) 146 So. 894; Dixie Investment Co. v. Player (La. App.) 149 So. 269.

"So far as we have been able to find, the higher courts have never passed upon the question directly as· to whether or not paving assessments under Act No. 187 of 1920 prime tax sales, and we are left with the dilemma presented by the fact that the tax statute as interpreted excepts paving liens, and the paving statute excepts taxes.

"Both of these liens, that for paving and that for taxes, are of unusually high rank and are construed strictly, and are creatures of statutory enactment. As neither specifically primes the other, the only solution to the conflicting ·claims seems to us to be the question of the order in which they· attach. In this case the paving lien was recorded prior to the filing of the tax rolls under which the tax sales took place, and therefore the paving lien primes the tax sales.

"For these reasons the exception of no right or cause of action is overruled."

■■ Defendant Dixie Investment Company, Incorporated, in its brief, states that "it takes the position that it acquired by virtue of said tax sales a title free and clear of plaintiff's lien and privilege." Neither side questions the holding that a vendor's lien mortgage for $12,000 properly primes both their claims.

Defendant admits that ordinarily, unless the statute which creates a lien subordinates it to taxes, a tax sale does not operate as a cancellation of the lien. It contends: That the following provisions of Act No. 187 of 1920 take its contention out of the usual rule: "A certified copy of such ordinance contained in the said assessment shall within ten days after its passage be filed ·for record in the office of the Recorder of Mortgages in the parish in which said assessed property is located, and the same when so filed and recorded shall operate as a lien and privilege in favor of said. city or town, or its trans-

ferees, against the real estate and railroad tracks therein assessed, which lien and privilege shall prime all other claims except taxes." Section 4. That, if the taxes are not primed as provided above, they must necessarily prime paving liens and privileges. That plaintiff obtained her lien because of Act No. 187 of 1920, which conferred it under the condition that it would be primed by taxes. We do not so construe the provision. The title of Act No. 187 of 1920 (as amended by Act No. 115 of 1922, § 1) indicates no purpose to rank taxes above ordinary liens or to prefer them in any way except to the extent that they shall not be primed by a timely recorded paving lien.

The ordinance in this case was not recorded within the required ten days. It was decided by this court, based upon instructions from the Supreme Court, in the case of City of Shreveport v. Urban Land Co., Inc., 146 So. 894, and in the case of Cook v. Lemoine, 149 So. 263, 267, that, where the ordinance is filed after the expiration of the ten days, a valid lien is created as of the date of the filing, but that, because of the delay beyond the statutory ten days, the provisions quoted above as to priority do not apply. In the Lemoine Case the court said, referring to the Urban Land Company Case: "Under the authority of that decision a lien came into existence in favor of the city of Shreveport on the day the ordinance accepting the paving and making the assessment was filed for recordation in the office of the recorder of mortgages, and primed any lien or mortgage that was filed subsequently."

In other words, the lien created by the recordation after ten days was an ordinary lien governed as to priority by the general laws on that subject.

Therefore it would seem that, unless defendant can point to some other law giving taxes priority over a previously recorded ordinary lien, the opinion quoted above will be affirmed.

That relied upon is section 63 of Act No. 170 of 1898 (as amended by Act No. 228 of 1932, § 1), the General Tax Law, which reads, referring to a recorded tax deed: "And if not redeemed, such record in the conveyance or mortgage office shall operate as a cancellation of all conventional and judicial mortgages."

Conventional and judicial mortgages are thus defined in article 3287 of our Civil Code:

"Conventional mortgage is that which depends on covenants. * * *

"Judicial mortgage is that which results from judgments."

Article 3186 of the same work provides: "Privilege is a right, which the nature of a debt gives to a creditor, and which entitles him to be preferred before other creditors, even those who have mortgages."

There is, then, a clear distinction between liens and privileges and mortgages. The former are not canceled by a tax sale. Moody v. Sewerage & Water Board, 117 La. 360, 41 So. 649; Conservative Homestead Ass'n v. Conery, 169 La. 573, 125 So. 621.

Article 3273 of the Civil Code provides that "privileges are valid against third persons, from the date of the recording of the act or evidence of indebtedness as provided by law."

The learned district judge was correct in his opinion on the exception in holding that, in this case, the conflicting claims could only be ranked according to the date of their recordation. The paving lien having been recorded prior to the tax sale, it has priority over it, and the tax purchaser took subject to the paving lien.

The judgment appealed from is affirmed.