### DYER et al. v. WILSON et al.
#### No. 5913.

Court of Appeal of Louisiana.
Second Circuit.
June 28, 1939.

John B. Files, of Shreveport, for appellants.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for appellees.

HAMITER, Judge.

Possession of a certain thirty-acre tract of land situated in Caddo Parish, Louisiana, is sought by plaintiffs in this action instituted pursuant to the provisions of Revised Statutes, § 2155, as amended by Act No. 49 of 1918, Act No. 55 of 1926, and Act No. 200 of 1936. This legislation outlines a procedure for obtaining possession of leased premises. Those impleaded as defendants are W. P. Wilson, Donald B. Wilson and Robert W. Goodson.

Ownership of the aforementioned property is asserted by plaintiffs, as the petition discloses, through a tax sale held July 7, 1931, under an assessment to the International Oil and Gas Company, Inc. For a cause of action they allege:

"That on or about the year 1920, the said International Oil Company, acting through its agent and attorney, John B. Files, executed a five year lease on said premises to W. P. Wilson, who was a son-in-law of W. M. and A. D. Goodson, acting for himself and said W. M. and A. D. Goodson, the consideration of said lease being the cash sum of $250.00.

"That the said W. P. Wilson moved on to said premises and occupied same with W. M. and A. D. Goodson from year to year continuously.

"Petitioners aver that they have been informed that W. M. and A. D. Goodson have died and the said W. P. Wilson moved from said premises and placed his son, Donald B. Wilson, in possession of said premises, and that Donald B. Wilson has now moved from said premises, leaving Robert W. Goodson, a nephew of W. P. Wilson, and son and heir at law of W. M. and A. D. Goodson, in possession of said property.

"Petitioners further show that said lease has been continued by reconduction from year to year and that the said W. P. Wilson, Donald B. Wilson and Robert W. Goodson have each failed to pay the rental due for said leased premises."

Plaintiffs further aver the giving to defendants of the required notice to vacate, and a noncompliance therewith.

All defendants filed exceptions of no cause and no right of action. These were sustained and the suit ordered dismissed, with reservation of the right to institute any other appropriate proceeding. From the judgment plaintiffs appealed.

Revised Statutes, § 2155, as amended, supra, provides in part that—

"When any person having leased any house, store or other buildings, or landed estate, for a term of one or more years, or by the month or otherwise, either verbally or otherwise, shall be desirous of obtaining possession of the said leased premises upon the termination of the lease, either by limitation or by nonpayment of the rent when due, or any other breach of the said lease, he shall demand and require in writing his tenant to remove from and leave the same, allowing him five calendar days from the day such notice is delivered."

A plaintiff who proceeds under such statutory law must show that the relationship of landlord and tenant exists between the parties litigant; that the lease involved has expired; and that proper notice to vacate the premises has been served upon the lessee. Miller v. White, 182 La. 837, 162 So. 638.

It is urged by defendants, under their exceptions, that the petition of plaintiffs

fails to disclose the existence of the requisite relationship of landlord and tenant between the parties to this cause. For the purpose of giving consideration to this contention, the allegations of the assailed pleading will be accepted as revealing the true facts of the case.

Exceptors first point to the fact that the lease contract relied on by plaintiffs was executed in 1920, and was to endure for a five year term, or until 1925. It is then argued that such lease could not have been continued through tacit reconduction until the filing of this suit in the year 1938, as plaintiffs alleged, because reconduction is permitted and can take place for a maximum period of only one year following the contract's expiration. In support of this argument they cite Civil Code, article 2688, which reads:

"If, after the lease of a predial estate has expired, the farmer should still continue to possess the same during one month without any step having been taken, either by the lessor or by the new lessee, to cause him to deliver up the possession of the estate, the former lease shall continue subject to the same clauses and conditions which it contained; but it shall continue only for the year next following the expiration of the lease."

According to our interpretation of the cited codal article, the contended restriction is not therein provided. The pertinent provision means, we think, that reconduction takes place, when the required possession is had, only for one year at a time. It does not, however, fix any maximum number of yearly periods. For instance, if a lessee under a two-year lease holds undisturbed possession of the premises for one month after the stipulated term, such lease shall continue for the year following the expiration; thereafter, if an additional month's possession is enjoyed, a continuance for another one-year period endures; and so on from year to year. Mossey v. Mead, 4 La. 195; Classen v. Carroll, 18 La.Ann. 267; Armstrong v. Bach, 20 La. Ann. 190.

It is next said that the petition does not sufficiently allege that defendants hold possession of the property under the lease contract. The allegations are, in substance, that the lease was made by the International Oil and Gas Company, Inc., in favor of W. P. Wilson, one of the defendants herein, and of W. M. Goodson and A. D. Goodson, all of whom assumed the occupancy of the premises. Thereafter, W. M. and A. D. Goodson died, while said defendant W. P. Wilson moved from the property and placed his son, defendant Donald B. Wilson, in possession of it. Later defendant Donald B. Wilson departed from the property, leaving defendant Robert W. Goodson in charge of it. The latter, according to the petition, is a son of decedents W. M. Goodson and A. D. Goodson, two of the original lessees, to whose rights he succeeded by inheritance, and for whom he now holds possession. "A contract for letting out is not dissolved by the death of the lessor, nor by that of the lessee; their respective heirs are bound by the contract." Civil Code, article 2731; Cheney et al. v. Haley et al., La.App., 142 So. 312. It further appears, although the allegations are somewhat vague in this respect, that the present occupant also holds possession, through assignment of the lease, for the remaining original lessee, defendant W. P. Wilson. In our opinion, therefore, the petition satisfactorily alleges that defendants have possession of the property under the lease of the International Oil and Gas Company, Inc.

Lastly, we are called upon to determine what effect the tax sale of the property had upon the existing relationship of landlord and tenant, such sale having been made to these plaintiffs under an assessment to the lessor, the International Oil and Gas Company, Inc.

In view of the recited possession, and of our above holding, unquestionably the proceedings employed herein would be proper if title to the property had passed from said lessor to plaintiffs by a conventional transfer. Exceptors say, however, that the tax sale cleansed the property's title of all encumbrances, including the lease, and that it created a new and independent title in the plaintiffs. They cite in support of that statement, Frederick et al. v. Goodbee, 120 La. 783, 45 So. 606, 608, in which the court said: "The sale of the property itself is a sale of the whole title, and in such case all prior claims in, to, or against the property are cut off and divested, and the purchaser acquires a new and complete title in the land under an independent grant from the sovereign authority." This quoted phraseology appears to be rather far reaching in scope and effect when consideration is given to the holding of the Supreme Court in the

854

later case of Conservative Homestead Ass'n v. Flynn, 178 La. 17, 150 So. 564, 565. Therein it was said:

"There can be no doubt that under section 33 of Act No. 170 of 1898, the lien or mortgage for taxes outranks all other incumbrances, except the tax rolls for previous years, and that the state or the municipality, as the case may be, has the right to sell the property in the enforcement of its delinquent taxes.

"But there can be no doubt, also, that under section 63 of the statute the tax purchaser, if a third person, acquires the property subject to all incumbrances except conventional or judicial mortgages.

"As the court pointed out in the case of Moody & Co. v. Sewerage & Water Board, 117 La. 360, 41 So. 649, which was cited and followed in the Conery case [Conservative Homestead Ass'n v. Conery, 169 La. 573, 125 So. 621], pledges, privileges, and tax mortgages are creatures of positive law. Nothing as to taxes is left to implication, and there are no securities for their payment except those provided by legislative authority constitutionally exercised. The lawmaking power may provide that the property sold for delinquent taxes may pass free of all mortgages and liens, but unless it thus provides the property does not pass free of all incumbrances. The law may also limit the extent to which the incumbrances shall remain on the property.

"The sixty-third section of the revenue statute under which the property involved herein was sold provides that if the property be not redeemed within a year from the date of filing the deed for record, such record shall operate as a cancellation of all conventional and judicial mortgages. The statute does not make the tax sale operate to cancel all liens or mortgages, but only all conventional and judicial mortgages. The vendor's lien and privilege is not one of the incumbrances on the property which the statute declares shall be canceled as the result of the recordation of the tax deed."

█ The deduction must be drawn from the doctrine of the last referred to decision and from the provisions of the revenue statute, that in a tax sale, such as we are here concerned with, and as distinguished from an express adjudication to the state, the sovereign is never vested with title to the involved property and therefore cannot and does not itself grant one. It possesses only a lien and privilege on the property to secure the payment of delinquent taxes, and in the enforcement of that security, can, pursuant to legislative authority, cause the property's sale. Under a forced conveyance of that character, the purchaser acquires such title to and rights in the property that the tax debtor has, subject to all encumbrances affecting it except conventional or judicial mortgages. In the instant case, therefore, the rights of the International Oil and Gas Company, Inc., as lessor, passed to plaintiffs herein.

█ Of course, the reconducted lease in question was terminated when the tax sale occurred. There was then a disturbance of the enjoyment of the premises, because the tax purchasers were privileged to demand and obtain actual possession thereof. Section 66 of Act 170 of 1898. And the possessors under the lease were entitled to abandon the premises without further obligations. An abandonment was not effected, however, and plaintiffs did nothing to obtain possession. Consequently, the lease continued through the means of tacit reconduction.

The provisions of Civil Code, article 1817, seem to be pertinent. These are:

"Silence and inaction are also, under some circumstances, the means of showing an assent that creates an obligation; if, after the termination of a lease, the lessee continue in possession, and the lessor be inactive and silent, a complete mutual obligation for continuing the lease, is created by the act of occupancy of the tenant on the one side, and the inaction and silence of the lessor on the other."

In the case of Anderson v. Comeau, 33 La.Ann. 1119, the Supreme Court considered the effect of a judicial seizure, made under writs of fieri facias, on an unrecorded lease. It was said in the opinion:

"That, in such case, the effect of the seizure, as between the lessor and the lessee, by reason of the disturbance of the enjoyment of the thing leased by the latter, is to dissolve the lease, and to give to him the right to abandon the property, and to claim from the lessor the restitution of the rents which may have been paid in advance.

"That if, instead of abandoning the property, the lessee, with the consent of, or without opposition by, the sheriff or the seizing creditor, elects to retain possession,

after the seizure, without change of terms, this operates a tacit reconduction or attornment, in favor of the seizing creditor, during the term of the seizure, at the same rate of rent."

In view of the foregoing, we are of the opinion that the summary remedy prescribed by the first above mentioned legislation for obtaining possession of leased premises is available to the plaintiffs herein, and that they have properly resorted to it.

The judgment, therefore, is reversed and set aside, the exceptions of no cause and no right of action are overruled, and the case is remanded for further proceedings according to law. Defendants shall pay the cost of this appeal, while all other costs shall await the final determination of the case.