We heretofore considered the efficacy of the petition in this case in passing on exceptions of no cause and no right of action, and ruled that under the allegations plaintiffs were warranted in resorting to summary (ejectment) proceedings as a means of having the possession of the land involved restored to them. 190 So. 851. Specifically, we held that the allegations of the petition sufficiently disclosed the relation of landlord and tenant through tacit reconduction of a contract of lease to support the character of procedure adopted by the plaintiffs who allegedly occupied the position of the original lessor. The case was remanded for trial on the merits. The sole question to be thereby determined was whether the allegations of the petition as regards reconduction were correct. The answer of defendants squarely puts at issue that question. Trial on the merits resulted in a judgment for the defendants, and plaintiffs appealed.
The material facts of the case, to a considerable extent, are controverted. It appears that many years ago the land involved was deeded to W.M. Goodson and his wife, Mrs. A.D. Goodson. We here mention this fact because it is obvious that the naming of Mrs. Goodson as a vendee in the deed has material bearing upon the character of the possession of the property presently held by her son, Robert W. Goodson, one of the defendants.
In January, 1917, W.M. Goodson conveyed the land to W.O. Anthony, who, soon thereafter, conveyed it to the International Oil Gas Company, Inc. It was sold in July, 1931, for delinquent taxes of the year 1930 in the name of said company and was purchased thereat by John B. Files and F.L. Dyer, who has since died. His widow and sole heir and Mr. Files are plaintiffs herein.
The Goodsons continued to occupy the land with improvements after the sale to Anthony. In September, 1917, by written contract, W.M. Goodson leased the property from the said company for the year 1918. Mrs. Goodson is named as a lessee in the draft of this lease agreement but it is shown that she did not sign it. After the expiration of this lease the Goodsons continued to live on the premises without disturbance and without paying any rent until their deaths. He died in 1935 and she in 1937.
In the year 1920, the month and day not being shown, John B. Files, acting as the agent of the International Oil Gas Company, Inc., verbally leased the property to W.P. Wilson, a son-in-law of the Goodsons, for a period of five years for $250 cash, in advance. At this date there were two residences on the land — the old family home, occupied by the Goodsons, and a newer dwelling near by, erected by Wilson and occupied by himself, wife and children. In leasing the property, Wilson had two primary motives, viz:
To provide himself and family with a temporary living place, and to assure peaceful occupancy of the family home by the Goodsons for the period of the lease.
The record discloses that Wilson moved from the property in the year 1923, about two years prior to expiration of the lease, and did not return to the place except for intermittent visits with the Goodsons, and did not thereafter exercise any right, as lessee, thereover. When he moved away he appointed no one to represent him as lessee. Robert W. Goodson, son of the deceased Goodsons, at time of their deaths, prior thereto and continuously thereafter, lived on the land and used it as he desired, without disturbance until the filing of this suit.
Plaintiffs allege that in leasing the property from Files, as agent, Wilson acted for himself and for W.M. Goodson and wife. The record does not sustain this theory. They also alleged: *Page 128 
 "Art. 9.
"Petitioners aver that they have been informed that W.M. and A.D. Goodson have died and the said W.P. Wilson moved from said premises and placed his son, Donald B. Wilson, in possession of said premises, and that Donald B. Wilson has now moved from said premises, leaving Robert W. Goodson, a nephew of W.P. Wilson, and son and heir at law of W.M. and A.D. Goodson; in possession of said property.
 "Art. 10.
"Petitioners further show that said lease has been continued by reconduction from year to year and that the said W.P. Wilson, Donald B. Wilson and Robert W. Goodson have each failed to pay the rental due for said leased premises."
It is not true that Wilson left his son, Donald B. Wilson, in possession of the property. The son was then only eight years of age. He accompanied his parents when they moved away in 1923 and has since had nothing to do with the property. This being true, he could not have delivered possession of the premises to Robert W. Goodson, as is alleged.
The allegations of Art. 9 of the petition, above quoted, inferentially, at least, contradict the contention that the Goodsons were joint lessees with Wilson. If lessees, why would Wilson wish to entrust the possession of the property to others when they (the Goodsons) were on the place and continued to stay thereon for over thirteen years? Mr. Wilson is quite positive that he acted for himself, primarily, in leasing the property. In a sense, the benefits of the lease developed upon the Goodsons, as heretofore stated, but not in the capacity of lessees. This theory of the matter is rather clearly supported by a statement in a letter written by Mr. Files to Wilson on February 5, 1937, viz: "* * * I leased you the land for a period of five years for the consideration of $250.00, which you paid. * * *"
At the date of trial Robert W. Goodson was forty-two years of age. He had lived on the land for thirty-five years. His testimony reflects light upon his own, as well as his parents' possession of the land. We quote relevant parts of it:
"Q. Why did you continue to occupy it as long as your mother and father lived? A. Well, as their interest and as a home to live in.
"Q. It has always been the family home? A. Yes.
"Q. Now when your mother and father died why, or how did you retain possession of it? A. Well, when they died, I was left in possession of it and am still in possession as a home, as my interest.
"Q. Are you claiming your possession now under your father or mother? A. Mother.
"Q. Under your mother? A. Yes.
"Q. And why? A. Because mother was half interested in the property; she bought a half interest, furnished the money — * * *
"Q. Go ahead and finish your answer; you started telling why you possessed it under your mother. A. Because she bought the place; when the place was sold by father, well, she never did sign the deed; I feel half belongs to her.
"Q. From your viewpoint she had a half interest in the property? A. Yes."
This testimony reveals that at least Mrs. Goodson was of the belief that one-half interest in the land belonged to her since the deed thereto was made jointly to her and W.M. Goodson, and she did not sign the transfer to Anthony. For this reason she would not join in the lease signed by her husband in September, 1917. The son entertains the same view as did his mother. This being true, clearly he is presently occupying the property, and has done so since his mother's death, as owner or part owner by inheritance.
The law of tacit lease reconduction is found in Article 2688 of the Civil Code. It reads as follows: "If, after the lease of a predial estate has expired, the farmer should still continue to possess the same during one month without any step having been taken, either by the lessor or by the new lessee, to cause him to deliver up the possession of the estate, the former lease shall continue subject to the same clauses and conditions which it contained; but it shall continue only for the year next following the expiration of the lease."
To effectuate a reconduction of a lease of predial property the primary and indispensable prerequisite is that the lessee must remain in undisturbed possession of the premises, for thirty days immediately following the expiration of the term of the lease. Wilson did not do this. He simply moved away and allowed matters to take their own course and shape their own way. *Page 129 
He evidently knew of Mrs. Goodson's position as regards one-half interest in the property and was willing that the matter be worked out without further intervention on his part. The status quo as he left it, remained unaffected for some fifteen years. No rent was paid and none demanded judicially. The delay in suing for possession, it is explained, is attributable to humanitarian motives as regards the elder Goodsons. This would not have prevented action against Wilson for the rent price.
We are convinced that the relation of landlord and tenant did not exist between plaintiffs and either defendant when suit was filed and, therefore, this summary action was improperly instituted against the alleged lessees.
For the reasons herein set forth, the judgment appealed from is affirmed, with costs.